**Carl Dean PETERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–99–00505–CR, 01–99–00517– CR-01–99–00520–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 12, 2000.

Charles G. Kingsbury, Beaumont, Robert Higgason, Houston, for Appellant.

Michael J. Guarino, B. Warren Goodson, Jr., Galveston, for State.

Panel consists of Justices COHEN, HEDGES, and ANDELL.

## OPINION

MURRY B. COHEN, Justice.

Appellant pled guilty to one indictment charging aggravated sexual assault of his granddaughter and to four indictments charging indecency with that child by contact. The jury assessed punishment at 35 years for the aggravated sexual assault and 15 years for each of the indecency offenses.

### Exclusion of Expert Testimony at Punishment Stage

Appellant contends the trial judge erred in excluding punishment stage testimony by appellant's expert treating psychiatrist, Dr. Collier Cole, about a study showing that three percent of incest offenders who receive proper treatment will reoffend.

As a general rule, all relevant evidence is admissible, including expert testimony. *See* Tex.R. Evid. 402, 702. Like all other relevant evidence, the admission of relevant expert testimony is favored, and one opposing it has the burden to show that its probative value is "substantially" outweighed by other factors. *See* Tex.R. Evid. 403. Because the State did not do so, we reverse in part and remand this case for a new punishment hearing.

## A. The Excluded Testimony

Appellant admitted he sexually molested his 10–year–old granddaughter in 1996 and, some 20 years earlier, the granddaughter's mother, his adopted daughter. Appellant requested and was eligible for probation. His expert, Dr. Cole, who testified out of order during the State's case-in-chief at punishment, was a clinical psychologist and sexual therapist specializing for over 20 years in sexual disorders. Dr. Cole treated appellant for the 18 months before trial. The State has never disputed Dr. Cole's qualification as an expert, and its own expert, Dr. Jerri Engman, "highly respects his opinion."

Before the jury, Dr. Cole testified that appellant had no organic brain disorder, was doing well and progressing in therapy, and was meeting some of its goals, such as developing empathy for the victim, showing honesty, accepting responsibility, attending all therapy sessions, and removing himself from tempting situations. Dr. Cole also discussed the treatment of sex offenders on probation and some of the restrictions that can be placed on them.

Dr. Cole then distinguished pedophiles from incest offenders, stating that incest offenders usually commit offenses only within the family. He concluded appellant was an incest offender, not a pedophile. When appellant then attempted to question Dr. Cole on the recidivism rate of incest offenders who receive treatment,[1] the State objected to relevancy and speculation and took Dr. Cole on voir dire. We set out the voir dire discussion in its virtual entirety (the trial judge's rulings are italicized):

Prosecutor: Dr. Cole, you have quoted some statistics; is that correct? Today, here?

Dr. Cole: I am not sure that I have quoted any statistics yet, sir.

Defense Counsel: I don't think he has quoted any statistics yet, Judge. I object.

Prosecutor: Defense counsel mentioned two percent frequently in his opening statement, and I am trying to get to what that two percent is.

Defense Counsel: If he asks the two percent, I don't have a problem with that.

Prosecutor: I asked him what statistics he has quoted today so far or what statistics is he going to quote.

Court: All right.

. . .

Prosecutor: Okay. And basically you treat them, but is there a 100 percent guarantee that any sex offender isn't going to do this again?

Dr. Cole: No.

Prosecutor: Why not?

Dr. Cole: Well, there's no guarantee that cancer treatment is going to cure cancer, that an alcoholic is going to be cured forever. There is a problem in this business. We don't talk about cure. We talk about control.

Prosecutor: I understand.

Dr. Cole: And we teach individuals ways to control their behavior.

Prosecutor: I understand that. But I want to talk about sex offenders. Is there a 100 percent way to control their behavior to keep them from reoffending or to keep them from doing it again?

Dr. Cole: No.

. . .

Prosecutor: At this time we would like to call the Court's attention and I have provided case law to opposing counsel, *Ortiz v. State*, 834 S.W.2d 343, concerning suitability for probation and how that is not proper punishment evidence based on this case.

1. Appellant's unanswered questions were: "With proper treatment, what percentage of the incest offender population will commit another offense?" and "What percentage of incest offenders with proper rehabilitation will go out and do it again?"

It's purely speculative, and we would ask that you restrict them accordingly.

Defense Counsel: I don't think this case is—

Court: Let me read it for a second, okay? Mr. Kingsbury [defense counsel], you say what?

Defense Counsel: I don't think this case is applicable to the case at hand. It does state on page five of this particular document. I don't know what it would be with regard to the actual case itself. "So long as the record provides a rational basis to support the trial court's judgment, pursuant to rule 702, that expert testimony will assist the jury under the standard articulated in *Pierce v. State.*" I don't think, Judge—in this case it's clearly the jury needs to know that, whether Mr. Peters can be rehabilitated is clearly a right that the jury should be able to hear. I don't see how it's relevant. This case doesn't apply.

Prosecutor: Your Honor, we believe this case does apply. We believe that Dr. Cole's testimony will center on the fact and will lead to the fact that he should be put—that Mr. Peters should be put on probation and that we feel that this invades the province of the jury and we should let the jury decide what the proper punishment should be. This clearly is going to be a "distracting inquiry into the relative merits of probation versus incarceration." And under the law cited under the language of this statute, once the party opens the door to evidence of probation suitability, the opponent at his option may either object that the evidence should be excluded or present evidence in rebuttal. At this time the State is objecting. We feel it's purely speculative on anyone's part to say what any defendant is going to do in the future.

Court: I didn't hear him say he was suitable or unsuitable.

Prosecutor: But my objection based on that case is that's where they are going to go with these are what we do [sic], this is what treatment is. This is how he has done in treatment for the last 18 months and, ergo, therefore, he should be left on probation so he can keep doing all these good things. And this is what we are objecting to under this case.

Court: This case from what I read says I can let it in or keep it out and won't be an abuse of discretion either way.

Prosecutor: I agree with you. I agree with you. But what all of this is is an inquiry, a distracting inquiry into a decision that's clearly within the province of the jury of what the proper punishment should be.

Court: Well, he hasn't testified that the jury should do this or do that. All the evidence has shown so far is what this man has admitted and the testing as shown and what his diagnosis is. And the last question that we had was a question about what percentage of people who, if I am not [mistaken], the percentage of people who reoffend in his category; is that correct?

Defense Counsel: That's correct.

Prosecutor: And, again, my objection to any line of questioning along those lines is that it's irrelevant. We are not talking about statistics in rehabilitation or incarceration for all sex offenders. We are here to talk about Mr. Peters. And anything, any percentages based on the group of sex offenders and how they do on probation or how they are treated or any of that stuff is irrelevant to this proceeding right here.

Court: I gave you a chance to cross-examine him on that issue, and you haven't asked a question one about that yet.

Prosecutor: I understand that, Your Honor; but I am reurging my objection that that's irrelevant what every-

body else did on probation or how they are treated is irrelevant to this proceeding. . . .

Defense Counsel: Specifically I asked the question with regard to this type of category what percent of population would reoffend and specifically with regard to Carl Peters. I don't know how much more specific I can get.

Court: You didn't in regard to Carl Peters before.

Defense Counsel: Well, with his specific category what percentage will reoffend? That's my question, and I want to ask it in front of the jury.

Court: *Well, he can't predict whether this man is going to reoffend or not. And I guess Mr. Reed [the prosecutor] has a point. It doesn't matter what other people do or have done that matters. It matters what his punishment should be. So I will sustain that objection,* but is there another point? I mean, we can come back and ask him about the rest of his treatment.

Prosecutor: I understand.

Court: According to this what else do you anticipate we are going to have to—

Defense Counsel: It's—the gist of what that treatments [he] has received and how he is doing in treatment.

Prosecutor: I don't have problems with what treatment this doctor is giving this patient.

Court: And how he has behaved so far.

Prosecutor: Yes. But I will object to any opinion about future behavior or as to an opinion to what punishment should be in this case.

Court: As to whether—

Prosecutor: As to whether he thinks it would be in his best interest to get probation or would it be in his worse interest to be incarcerated or anything like that.

Court: Well, the point of this isn't what's in the best interests. That

isn't an issue. He could testify about what he knows and what his experiences has been with the man, but he obviously can't predict that this man will reoffend or not reoffend.

Defense Counsel: I do think, though, the jury should be allowed to know that only two percent of the population of incest offenders reoffend. They have a right to know that, not that this specific client will or will not. We don't know. That's all subjective.

Court: Where do you get the information that it's two percent? what is that based on?

Dr. Cole: I have an article that I provided to Mr. Kingsbury [defense counsel] from the National Journal of Corrections which talks about treated and untreated sex offenders and recidivism.

Court: Obviously there was a study done?

Dr. Cole: This is a corrections compendium from the National Journal of Corrections. The title of the article is, "Sex Offenders, Does it Work?" There's a graph here that shows recidivism rates for treated sex offenders is 18.5 percent recidivism. For general violent offenders it's 30 percent. They also quote here an article that says the State of Vermont—and it's quoted here from the Vermont Department of Corrections January '95 says the State of Vermont reports offense rates after treatment as 19 percent for rapists, seven percent for pedophiles, three percent for incest, and three percent for hands-off crime, such as exhibition.

Court: Is that an article you wrote?

Dr. Cole: No, I didn't write this. This is a published article in the National Journal of Corrections. It's a professional journal in the corrections field.

Court: *Okay. I'm going to exclude that testimony about that since that's not a study you did.*[2]

Prosecutor: That's fine. My objection is all of that is irrelevant. I want to make sure it's clear that recidivism rates for certain kinds of sex offenders and violent criminals and exhibitionists, all that is relevant [sic] to this proceeding.

Court: Actually, not entirely irrelevant, but it's not something he has personal knowledge of. It's based on hearsay that he is getting from a magazine article. Do you have something new to say?

Prosecutor: Yes, ma'am. Is that what they were talking about, all of this other stuff puts into profiles? I think that's clearly irrelevant.

Court: That whole issue you haven't brought up.

Prosecutor: I understand that. I want to bring it to the Court's attention that they may be going through that, as well.

Court: *If this were a guilt innocence phase, then testimony about whether he fits into the profile would be entirely inadmissible. But we are not at guilt innocence phase. And everyone is allowed evidence about what profile he did fit in because it's pretty incriminatory because it's based on his admitting things. It's not—you know, you are not contesting the profile that he has been diagnosed as fitting into, so we are not—does he fit into the profile stage? We were at a different issue now. I am not going to allow the statistics about sex offenders. And you can say what he has done with your treatment, what your diagnosis is of him. You can't make a guess on whether he is going*

*to reoffend because nobody really knows. Mr. Peters doesn't know. . . . .*

On cross-examination before the jury, the State asked Dr. Cole the following questions:

Prosecutor: Dr. Cole, why would a convicted sex offender who is a situation molester [appellant's category], why would they not be allowed to be around children?

Dr. Cole: That is a common condition of probation for all sex offenders. It just makes good sense.

Prosecutor: Why?

Dr. Cole: To remove any possibility for any sort of problems.

Prosecutor: To reduce any other risk?

Dr. Cole: Correct. Total risk reduction.

. . .

Dr. Cole: I think typically the cycle is that they—whatever trigger that causes this sort of behavior, typically afterwards there's a lot of remorse, a lot of feelings of guilt, and lot of shame and desire, "I am never going to go through this again." And then as that cycle continues, it returns back to the point where stressors occur and they are back into that cycle.

Prosecutor: Would you agree with me it's kind of like a pendulum swinging back and forth?

Dr. Cole: Certainly can, yes, untreated most definitely.

Prosecutor: If someone promised they wouldn't do it again but then they did it again, would you be surprised by that? And in the context of the sex offender?

Dr. Cole: Not necessarily, no.

. . .

Prosecutor: And Dr. Cole, is there a 100 percent guarantee that a sex offender won't reoffend while they are out

**2.** We treat this as the equivalent of a ruling on hearsay grounds. *See* Tex.R. Evid. 602 ("A witness may not testify to a matter unless . . . the witness has personal knowledge of the matter . . . This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.").

walking around being exposed to other children?

Dr. Cole: .There is no 100 percent guarantee for him.

Prosecutor: Would you agree with me that the risk of reoffending would be drastically reduced, the risk of reoffending against small, young, female children would be drastically reduced if someone was removed from a setting or placed in a setting where there are no young female children?

Dr. Cole: Correct. That puts them on hold for a period of time without treatment.

Prosecutor: Okay. Let's—well, let's talk about if they were removed to a setting where there is less temptation, there's no other children. Are you aware of any programs that the Texas Department of corrections offers to sex offenders who are incarcerated?

Dr. Cole: Yes, I am.

Prosecutor: Describe them for the jury.

Dr. Cole: I was chairman of the sex offender program, so I am very much aware of what's going on in the prison system right now. There are 26,000 incarcerated sex offenders in T.D.C. Five hundred of them are receiving treatment at this time.... So you are talking about 500 offenders receiving treatment and 25,500 receiving no treatment.... The Texas Department of Corrections has done their own study to show that the reoffense rate for sex offenders in their treatment program is less than 10 percent.

On redirect examination before the jury, Dr. Cole testified without objection that (1) most sex offenders do not receive needed treatment in prison; (2) untreated sex offenders are more likely to reoffend than are treated ones;[3] (3) receiving treatment can be a condition of a sex offender's probation; and (4) it is in any sex offender's best interest to receive treatment.

Also during redirect examination, the trial judge sustained the State's objection to appellant's following question:

Defense Counsel: [After questioning about what number of sex offenders in prison receive treatment] And if treated, less than 10 percent reoffend; is that what you said? Is that correct?

Dr. Cole: Correct.

Defense Counsel: About my client's specific category [of sex offender], what percent reoffend once they have been treated?

Prosecutor: Objection.

Court: Sustained.

Defense Counsel: He opened the door when he asked that question on recross.

Court: Sustained. You can ask your next question.

Dr. Engman then testified for the State. On Dr. Engman's voir dire, appellant objected to her testifying about the likelihood he would reoffend because questioning had shown she did not know recidivism statistics. The trial judge ruled as follows:

She can testify as to what their [T.D.C.'s] policies are and why they set those policies up based on her training and experience, but she can't make pre-

**3.** Defense Counsel: You stated earlier that 26,000 people right now are incarcerated in T.D.C. for sex offenders; is that correct?

Dr. Cole: Correct.

Defense Counsel: And only 500 of those receive treatment?

Dr. Cole: Currently only 500 are receiving treatment.

Defense Counsel: There are about 25,500 people who receive no treatment; is that correct?

Dr. Cole: Not at this time.

Defense Counsel: And that's people who are more apt to reoffend because they don't receive treatment; is that correct?

Dr. Cole: I think so. Again, based on outcome studies that I have reviewed as chairman for the council, untreated sex offenders are more likely to commit offenses than treated sex offenders.

Defense Counsel: And if treated, less than 10 percent reoffend; is that what you said? Is that correct?

Dr. Cole: Correct.

dictions on who would reoffend or percentage of people would reoffend. No statistics stuff, but you can ask her what the policies are, what the reasoning behind those policies are both while they are in prison and while they are on parole, the whole gamut of the program, but don't discuss like Mr. Collier Cole, he can't predict whether anybody is going to reoffend.

During direct examination before the jury, Dr. Engman explained that incarcerated sex offenders are not allowed contact visits with children because it is a "high risk" situation. She also agreed there is no 100 percent cure for sex offenders or guarantee that their illegal behavior will not happen again. During cross-examination, Dr. Engman distinguished pedophiles and incest offenders, as had Dr. Cole. The following exchange then immediately took place:

> Defense Counsel: And an incest offender is someone who in fact normally goes after people that are related to the family; is that correct?
>
> Dr. Engman: Yes.
>
> Defense Counsel: They don't go after a child walking down the street? They don't know [sic] a stranger, for example?
>
> Dr. Engman: Not typically. I have worked with some offenders who started as incest offenders, but—
>
> Defense Counsel: Objection. I think she has already answered the question.
>
> Court: Overruled. You may answer the question.
>
> Dr. Engman: I have worked with some offenders who would have been considered incest offenders when they started offending, but over time their behavior escalated, which means I guess in simple terms it grew, it got bigger, changed, I guess you could say, became more severe. And after some length of time, they were offend-

ing outside of the home against strangers.

(Appellant does not complain of this ruling on appeal.) The trial judge prevented appellant's attempted follow-up question about how many sex offenders treated in prison reoffend upon release. However, Dr. Engman agreed that putting appellant in prison would not cure him, since the prison treatment program lasts only two years and a sex offender should receive treatment throughout his life.

## B. Discussion

### 1. Preliminary matters

■ We first hold that Dr. Cole's testimony on incest-offender recidivism rates was not objectionable for being based on hearsay in a professional journal in his field. Under TEX.R. EVID. 703, experts are allowed to rely on such evidence. It is one of the things that makes them expert. Neither was the State's objection that appellant's questions impermissibly invaded the province of the jury a valid one. *See* TEX.R. EVID. 704; *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex.Crim.App.1992) ("invading the province of the jury" no longer valid objection to opinion testimony).

### 2. The law concerning admissibility of suitability for probation

In relying on *Ortiz*[4] and objecting that the testimony was irrelevant and a "distracting inquiry into the relative merits of probation versus incarceration," the State was invoking a line of non-capital cases from the Court of Criminal Appeals concerning punishment evidence of a defendant's suitability for probation, his likelihood of reoffending, the possible terms and conditions of probation, the functioning of the probation system, and like matters. (See cases cited in footnotes five through eight, below.) That Court has cited four reasons for holding it is generally not error to exclude—and is generally error to admit—such testimony in a case, even when a defendant applies for probation, unless the defendant first opens the door: such testimony (1) invades the prov-

4. 834 S.W.2d 343 (Tex.Crim.App.1992).

ince of the jury; [5] (2) is inadmissible under Code of Criminal Procedure article 37.07, section 3(a); [6] (3) is irrelevant under Code of Criminal Procedure article 42.12, concerning the jury's recommendation of probation; [7] and (4) could lead to a confusing "battle of the experts," or its probative value would be substantially outweighed by the danger of confusion under rule of evidence 403. [8] Because the first ground is no longer valid, [9] we examine whether article 37.07, article 42.12, or a potential "battle of the experts" makes Dr. Cole's excluded testimony inadmissible or irrelevant under the facts of this case. We conclude they do not.

### i. Article 37.07, section 3(a)

Section 3(a) of Code of Criminal Procedure article 37.07 controls admissibility of evidence at punishment. In all but two of the above-cited cases from the Court of Criminal Appeals, the applicable version of article 37.07, section 3(a) read in pertinent part as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may [, as permitted by the Rules of Evidence,] be offered by the state and the defendant *as to the prior criminal record of the defendant, his general reputation and his character.* The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. [10]

Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317 (effective

5. *See, e.g., Schulz v. State,* 446 S.W.2d 872, 874 (Tex.Crim.App.1969) (holding no error to exclude psychiatrist's punishment testimony that defendant might do well on probation, but not in prison, because it would invade the province of the jury); *see also Logan v. State,* 455 S.W.2d 267, 270 (Tex.Crim.App.1970) (relying on *Schulz* without further analysis, holding no error in excluding probation officer's testimony on primary requirements of probation applicants and on rehabilitative purpose of that county's probation program).

6. *See Brown v. State,* 741 S.W.2d 453, 454–55 (Tex.Crim.App.1987) (after citing article 37.07, section 3(a), holding no error in excluding probation officer's punishment testimony concerning operation of probation department and possible probation terms and programs).

7. *See Murphy v. State,* 777 S.W.2d 44, 65–67 (Tex.Crim.App.1988) (after holding unadjudicated extraneous offenses inadmissible at punishment under article 37.07, section 3(a), holding they were also irrelevant on issue of suitability for probation, because article 42.12 did not make this an issue for the jury's consideration in recommending probation) (plurality op. on reh'g); *accord Cavazos v. State,* 780 S.W.2d 281, 282–83 (Tex.Crim.App. 1989) (citing *Murphy's* holding that an extraneous offense is generally irrelevant at punishment to "a material issue tendered by an application for probation"); *Bagley v. State,* 776 S.W.2d 582, 583 (Tex.Crim.App.1989) (same); *see also McMillian v. State,* 865 S.W.2d 459, 460 (Tex.Crim.App.1993) (hold-

ing unadjudicated extraneous offense improperly admitted under *Murphy* and *Grunsfeld* rules, without further explanation); *Griffin v. State,* 787 S.W.2d 63, 67 (Tex.Crim.App.1990) (in case in which defendant had applied for probation, citing *Murphy* rule, but holding defendant opened door to admission of unadjudicated extraneous offense when he had previously testified he would abide by probation's terms and other witnesses pledged to support him in so doing); *Drew v. State,* 777 S.W.2d 74, 75–76 (Tex.Crim.App.1989) (in case in which defendant had applied for probation, following rule cited in *Murphy* to hold unadjudicated extraneous offense improperly admitted, and also holding defendant did not open door to its admission by then rebutting same with psychologist's testimony that he was suitable for probation) (plurality op.); *King v. State,* 773 S.W.2d 302, 303–04 (Tex. Crim.App.1989) (same, when defendant had previously testified he had never had misdemeanor conviction and would refrain from future violations of law) (plurality op.).

8. *See Ortiz,* 834 S.W.2d at 348 (remanding for determination of whether trial judge erred by excluding State's rebuttal evidence that defendant unsuitable for probation under rule 403, etc.); *Brown,* 741 S.W.2d at 455.

9. *See Ortiz,* 834 S.W.2d at 348 (citing Tex.R. Evid. 704).

10. The language "as permitted by the Rules of Evidence" was added effective August 25, 1985, so it was not present at the time of

January 1, 1966) (adopting Code of Criminal Procedure), *amended by* Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 22, 1967 Tex. Gen. Laws 1740 (effective Aug. 28, 1967), *amended by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 8(b), 1985 Tex. Gen. Laws 2473 (effective Aug. 26, 1985) (adding "as permitted by the Rules of Evidence") (now codified at TEX.CODE CRIM. P. ANN. art. 37.07, § 3(a) (Vernon Supp.2000)) (emphasis added). The italicized language was not exhaustive, and courts allowed evidence relevant to mitigation and even to probation. *See, e.g., Murphy,* 777 S.W.2d at 64 (article 37.07, section 3(a) is not exhaustive list of evidence showing offender's circumstances, and matters such as family background, religious affiliation, education, and employment history are also appropriate considerations in punishment assessment); *Allaben v. State,* 418 S.W.2d 517, 519 (Tex.Crim.App.1967) (evidence that sodomy defendant sought psychiatric treatment on sexual matters after the offense was admissible because, in addition to article 37.07, section 3(a)'s list, "evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible."). However, evidence of a defendant's probation suitability or his likelihood of reoffending was neither listed in the statute nor, as far as we have found, expressly held to be admissible punishment evidence by the Court of Criminal Appeals. *See Brown v. State,* 741 S.W.2d 453, 454–55 (Tex.Crim.App.1987) (holding trial judge properly excluded probation officer's punishment testimony on operation of probation department and possible probation terms, as these did not relate to punishment mitigation under quoted version of article 37.07, section 3(a)).

In 1989 and 1993, the legislature amended article 37.07, section 3(a) significantly:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, ~~as permitted by the Rules of Evidence,~~ be offered by the state and the defendant *as to any matter the court deems relevant to sentencing, including* **but not limited to** the prior criminal record of the defendant, his general reputation, ~~and~~ his character., **an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or bad act.** ~~The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.~~ . . .

Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04(a), 1989 Tex. Gen. Laws 3492 (effective Sept. 1, 1989) (italicized portion added), *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05(a), 1993 Tex. Gen. Laws 3759 (effective Sept. 1, 1993) (bolded portion added; stricken portion deleted) (now codified as TEX.CODE CRIM. P. ANN. art. 37.07, § 3(a) (Vernon Supp.2000)). Therefore, section 3(a) of this article now reads in pertinent part as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior

many of the cited cases. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 8(b), 1985 Tex. Gen. Laws 2473 (effective Aug. 26, 1985). However, the presence or absence of this phrase does not affect our disposition. Article 37.07, section 3(a) was also amended in 1987, but in ways not material to this opinion. *See* Act of May 22, 1987, 70th Leg., R.S., ch. 385, § 19(a), 1987 Tex. Gen. Laws 1898 (effective Sept. 1, 1987).

criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried .... [11]

TEX.CODE CRIM. P. ANN. art. 37.07, § 3(a) (Vernon Supp.2000).

The high Court's only opinion expressly discussing the admissibility of probation-suitability evidence under the post–1989 statute is *McMillian v. State*, 865 S.W.2d 459 (Tex.Crim.App.1993). The court of appeals had affirmed McMillian's conviction, holding that evidence of his unadjudicated extraneous offense committed after the offense for which he was tried was relevant to his probation request under the broadened, post–1989 article 37.07, section 3(a). *McMillian v. State*, 799 S.W.2d 311, 313–14 (Tex.App.—Houston [14th Dist.] 1990), *vacated*, 844 S.W.2d 749 (Tex.Crim.App. 1993) (per curiam). The Court of Criminal Appeals vacated that judgment and remanded for reconsideration in light of *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim.App.1992). *McMillian*, 844 S.W.2d at 749. On remand, the court of appeals again affirmed, holding (1) *Grunsfeld* did not apply because the unadjudicated extraneous offense occurred after the offense for which the defendant was tried and (2) the evidence was relevant to his probation request. 850 S.W.2d 777, 780–81 (Tex. App.—Houston [14th Dist.] 1993) (op. on remand), *rev'd*, 865 S.W.2d 459 (Tex.Crim. App.1993). In a brief per curiam opinion, the Court of Criminal Appeals again reversed. *McMillian*, 865 S.W.2d at 460.

After holding that post-crime extraneous offense evidence was inadmissible at punishment under *Grunsfeld*, it further held as follows:

> The court below also determined that the evidence was not improperly admitted because it was relevant in light of appellant's application for probation. However, the evidence was introduced prior to any defensive evidence, and was not offered to rebut testimony reflecting appellant's eligibility for probation. Therefore, appellant did not open the door for its admission. *See Murphy v. State*, 777 S.W.2d 44 (Tex.Crim.App. 1989); *Grunsfeld, supra*, 843 S.W.2d at 526 n. 12. Accordingly, we hold it was error for the trial court to admit it.

*Id.*

This quoted holding concerned whether the defendant, through his probation request or otherwise, had opened the door to *unadjudicated extraneous offenses*— which the *Grunsfeld* Court had held were inadmissible despite the 1989 amendments [12] (and which evidence we are not concerned with here). Because the only post–1989 amendment case on which *McMillian* relied was *Grunsfeld*,[13] and because *Grunsfeld* concerned the special category of unadjudicated extraneous offenses under this amendment, *McMillian* was not a holding that current article 37.07, section 3(a) makes all probation-suitability evidence inadmissible per se. Moreover, the article's 1993 amendments abrogated *Grunsfeld* and made evidence of unadjudicated extraneous offenses ad-

---

**11.** This article and section were also amended in 1995 and 1997 in ways that do not affect the quoted language or this appeal. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 82, 1995 Tex. Gen. Laws 2583 (effective January 1, 1996; applicable to conduct occurring after that date); Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 31, 1997 Tex. Gen. Laws 4191 (effective Sept. 1, 1997).

**12.** The *Grunsfeld* Court held that unadjudicated extraneous offenses were inadmissible at punishment under the 1989 version of article 37.07, section 3(a): while the new language "as to any matter the court deems relevant to

sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, and his character" was broader, "prior criminal record" was still defined as a final conviction or a probated or suspended sentence. 843 S.W.2d at 524–26. *Grunsfeld* was decided before article 37.07, section 3(a)'s 1993 amendments, which deleted the "prior criminal record" definition.

**13.** The *McMillian* Court also relied on *Murphy v. State*, a pre–1989–amendment case that we discuss below.

missible at punishment.[14] The same observations and distinctions apply to *Slott v. State*, which is the only other high Court case we have found in which probation was requested and the 1989 amendments applied. 843 S.W.2d 571, 571 (Tex. Crim.App.1992) (per curiam) (reversing and remanding for reconsideration of admission of unadjudicated extraneous offenses at punishment under *Grunsfeld*, without mentioning probation), *on remand*, 856 S.W.2d 817, 818, 819 (Tex. App.—Beaumont 1993, no pet.) (revealing for first time that probation was sought and holding unadjudicated extraneous offenses inadmissible under *Grunsfeld*).

■ Accordingly, the Court of Criminal Appeals has not yet expressly determined what effect the 1989 and 1993 amendments together have on the admissibility of evidence relating to a defendant's suitability for probation. *See Ortiz*, 834 S.W.2d at 346 n. 7 ("This case was tried ... prior to the 1989 amendment to Article 37.07, § 3(a) ... We do not here address the question whether 'suitability' for probation is an issue under the current incarceration [sic] of the statute."). It has held in other contexts, however, that the 1989 amendment was a "statutory recognition that evidence *other than* prior criminal record, general reputation and character is admissible." *Grunsfeld*, 843 S.W.2d at 524 (emphasis in original). That is, use of the word "including" was meant to clarify that the article's list of admissible evidence was not exhaustive. *Id.* This sounds like we have simply gone full circle back to *Allaben* (*see* 418 S.W.2d at 519), but we think it means something more: in *Allaben*, the statutory language was narrow ("... as to the prior criminal record of the defendant, his general reputation and his character ..."); now, it is very broad ("... as to *any* matter the court deems relevant to sentencing, *including but not limited to* ...") (emphasis added). Because of these

amendments, the El Paso Court of Appeals has overruled one of its earlier cases and held the post–1989 statute does not make per se inadmissible a probation officer's testimony that a defendant should not get probation. *See Mock v. State*, 848 S.W.2d 215, 225 (Tex.App.—El Paso 1992, pet. ref'd) (holding trial judge did not abuse discretion under 1989 amendments to article 37.07, section 3(a) by allowing State to elicit testimony from defendant's probation officer that there "was no chance of rehabilitating" defendant: "The consequence of the [1989] amendment to Article 37.07, § 3(a) was to grant the trial court wide latitude in the admission of evidence deemed relevant as long as its admission is otherwise permitted by the rules of evidence."). We agree with the El Paso Court of Appeals that the 1989 (and 1993) amendments do not make evidence about a defendant's suitability for probation per se inadmissible. *See id.* at 225.

■ The evidence held admissible in *Mock* is the flipside of the evidence appellant sought to admit. If article 37.07, section 3(a) did not prevent the State from showing that Mock could not be rehabilitated, then, of course, neither does it preclude evidence that a defendant can be rehabilitated. That is what appellant tried to prove by offering the Vermont study showing that only three percent of treated incest offenders reoffended.

### Conclusion

The 1989 amendments to article 37.07, section 3(a) were considered anti-crime legislation and were popularly known as "truth in sentencing." The then-existing version of article 37.07, section 3(a) was criticized as too restrictive because it favored criminal defendants by allowing juries to hear only of their reputation, character, and "prior criminal records," the last of which was narrowly defined as probations and final convictions. The goal was

---

14. *See Davis v. State*, 968 S.W.2d 368, 372 (Tex.Crim.App.1998) (noting 1993 amendment showed clear legislative intent that fact-finder have evidence of unadjudicated crimes, the opposite of *Grunsfeld's* holding).

to open wide the doors to all evidence "deemed relevant to ,sentencing," the assumption being that would favor the State, and it usually has. The courts also joined the trend by enacting the rules of evidence, providing that "all relevant evidence is admissible" unless statutes or constitutions say otherwise. *See* Tex.R. Evid. 402. But the important point is that the new statutory language of article 37.07, section 3(a) opened doors wider to all evidence, not just that favoring the State.

We conclude nothing in current article 37.07, section 3(a) makes evidence of a defendant's suitability for probation inadmissible per se.

### ii. Article 42.12, section 4 (jury recommendation of probation)

In *Murphy v. State*, the Court of Criminal Appeals held that suitability for probation was per se irrelevant to any material issue before the jury at punishment:

> Today, under Article 42.12, § 3a(a) [now section 4 [15]], supra, the law remains that whether to recommend probation is a decision wholly within the discretion of jurors. Also the law is still that a trial court need not inform the jury of any condition of probation. *It follows that what those conditions may be is of no consequence when application for probation is made to a jury. The jury is not there to predict future conduct. That one condition of probation is the defendant shall commit no offense against the law, therefore, is not germane to deliberations and to decision of a jury as to recommending probation. . . . The Adult Probation Act prescribes precisely when an applicant is qualified and how one becomes eligible to be considered by a jury for probation. The Act does not raise any other factual issue for the jury or suggest that jurors must conclude an applicant is "suitable" for probation; it contemplates the jury will merely exercise its discretion in determining whether to recommend probation.*
>
> . . .
>
> From evidence leading to the jury's own finding of guilt jurors well know that defendant engaged in conduct violative of the law, and they learn much about applicant as a person from that criminal conduct and other evidence adduced by the parties pertaining to the circumstances of the offender, including his character. The jury comes to understand that applicant has never before been convicted of a felony ... such inquiry having been expressly put in issue by Article 42.12, § 3a [now art. 42.12, § 4(e) ], supra. It may hear general testimony concerning applicant from a variety of persons about background, family, employment and the like.... [T]he testimony is available for such consideration as the jury may give in

---

**15.** "When there is a conviction in any court of this State and the punishment assessed by the jury shall not exceed ten years, the jury may recommend probation for a period of any term of years authorized for the offense for which the defendant was convicted, but in no event for more than ten years, upon written sworn motion made therefor by the defendant, filed before the trial begins.... In no case shall probation be recommended by the jury except when the sworn motion and proof shall show, and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or any other state...." Act of May 31, 1981, 67th Leg., R.S., ch. 639, § 2, 1981 Tex. Gen. Laws 2466 (effective Sept. 1, 1981) (current version at Tex.Code Crim. P. Ann. art. 42.12, § 4(a)-(e) (Vernon Supp.2000)). While this particular section has been amended in four legislative sessions and also renumbered, the language relied on in *Murphy* has not changed in a way that affects our disposition. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex. Gen. Laws 3499 (effective Sept. 1, 1989; also renumbering section 3a to section 4), *amended by* Act of July 14, 1989, 71st Leg., 1st C.S., ch. 8, § 1, 1989 Tex. Gen. Laws (C.S.) 9 (effective Oct. 18, 1989), *amended by* Act of May 26, 1993, R.S., ch. 900, § 4.01, 1993 Tex. Gen. Laws 3718–19 (effective Aug. 30, 1993), *amended by* Act of May 30, 1995, R.S., ch. 260, § 15, 1995 Tex. Gen. Laws 2476 (effective May 30, 1995).

assessing punishment and considering probation....

. . .

Accordingly, we hold that whether past criminal conduct by an applicant for probation may reveal a trait or propensity to violate the law is not relevant to a material issue tendered by an application for probation in a punishment proceeding before a jury. *For that matter, neither is a selfserving declaration by applicant that he will not violate the law if placed on probation.* . . .

777 S.W.2d at 66–67 (emphasis added; footnotes omitted). *Accord Griffin v. State,* 787 S.W.2d 63, 67 (Tex.Crim.App. 1990); *Cavazos v. State,* 780 S.W.2d 281, 283 (Tex.Crim.App.1989); *Bagley v. State,* 776 S.W.2d 582, 583 (Tex.Crim.App.1989); *McMillian,* 865 S.W.2d at 460; *Drew v. State,* 777 S.W.2d 74, 75–76 (Tex.Crim. App.1989) (plurality op.) (all involving admission of extraneous-offense evidence). The *Murphy* Court held that a defendant did not open the door to admission of unadjudicated extraneous offenses simply by requesting probation, but its italicized holding was broader. Indeed, in *Ortiz v. State,* the Court relied on *Murphy* 's holding when considering a psychiatrist's testimony that the defendant was an unsuitable probation candidate. The *Ortiz* Court declared: "We effectively held in *Murphy* that 'suitability' for probation is *not* an issue, and that evidence going to prove an applicant for probation 'suitable' is objectionable." 834 S.W.2d at 346 (emphasis in original). Under the *Murphy* and *Ortiz* line of case law, Dr. Cole's testimony on recidivism rates would have been per se irrelevant to the issue of probation.

But our inquiry does not end there. *Murphy* and all but two of its offspring from the Court of Criminal Appeals were also decided under the pre–1989 version of article 37.07, section 3(a), which was not as broadly worded as now. *See Ortiz,* 834 S.W.2d at 346 n. 7 ("We do not here address the question whether 'suitability' for probation is an issue under the current

incarceration [sic] of [article 37.07, section 3(a) ]."). The only probation-related opinions of that Court decided under the article's 1989 amendments were *McMillian* and *Slott,* which we have distinguished above. *See McMillian,* 865 S.W.2d at 460; *Slott,* 843 S.W.2d at 571. This makes a big difference.

■■ "Relevant" under current article 37.07, section 3(a) is defined as follows:

[T]he Rule 401 definition of "relevant" is not a "perfect fit" in the sentencing context. Rather, "admissibility of evidence at the punishment phase of a non-capital felony offense is a *function of policy rather than relevancy.* This is so because by and large there are no discreet factual issues at the punishment stage.... What evidence should be admitted to inform that normative decision is not a question of logical relevance, but of policy." Thus, . . . "[d]etermining what is relevant . . . should be a question of what is *helpful to the jury in determining the appropriate sentence* in a particular case."

*Mendiola v. State,* 21 S.W.3d 282, 285 (Tex.Crim.App.2000) (citations omitted; emphasis in original). Current articles 42.12, section 4 and 37.07, section 3(a) must be read together to see if *Murphy's* relevance holding still controls. After holding that article 42.12, section 5(c)(1) (making prior deferred adjudication admissible at punishment) did not conflict with article 37.07, section 3(a), the Court of Criminal Appeals noted in *dictum* that, if a conflict had existed between the statutes, article 37.07, section 3(a) would have prevailed, making the underlying offense for which deferred adjudication was given admissible, because

it is the later enactment and there is manifest intent that evidence of details of offenses be admissible. "In other words, the later-enacted amendment in article 37.07 should be understood to be a pro tanto repeal of prior evidentiary restrictions based on article 42.12.

George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE—CRIMINAL PRACTICE & PROCEDURE, § 38.34 (Supp.1998)."

*Davis v. State,* 968 S.W.2d 368, 372 (Tex. Crim.App.1998); *cf. also Glivens v. State,* 918 S.W.2d 30, 32–33 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd) ("Appellant responds that the admissibility of the extraneous offense evidence is governed not by article 42.12, but by article 37.07, which [pre–1993] version specifically made such evidence inadmissible to the offense in this case. We agree with the appellant. We note that article 37.07 is the more specific statute concerning the admissibility of evidence at the punishment stage of trial. Moreover, it has been held in other contexts that article 37.07 controls over article 42.12 in the event of a conflict."). The same logic applies here by analogy.[16] Article 42.12, section 4 has been amended since article 37.07, section 3(a) was expanded in 1989 and 1993, but the former article's language on which the *Murphy* Court relied has not substantively changed.[17] Therefore, article 37.07, section 3(a) controls, both because it is the more specific statute and also because it was the last to be changed substantively in this respect. *Cf. Davis,* 968 S.W.2d at 372. Because we have agreed with the *Mock* court that current article 37.07, section 3(a) "grant[s] the trial court wide latitude in the admission of evidence deemed relevant,"[18] we hold that suitability for probation *can* be relevant to the jury's recommendation, even if the opposing party does not first open the door to it, provided it is also "helpful to the jury in determining the appropriate sentence."[19]

Accordingly, we must respectfully disagree with our sister courts of appeals that have continued, under current article 37.07, section 3(a), to follow *Murphy's* and *Ortiz's* probation/relevancy holdings without analyzing the effect the 1989 and 1993 amendments had on them. *See Hardin v. State,* 20 S.W.3d 84, 90 (Tex.App.—Texarkana 2000, pet. filed May 26, 2000) (although holding appellant opened door to such rebuttal testimony); *Johnson v.*

**16.** We realize that the *Davis* Court, like the Court in *Brown v. State,* 716 S.W.2d 939, 949 (Tex.Crim.App.1986), on which *Davis* based its holding, was construing article 42.12, section 5(c) and its predecessor, not section 4. We also realize that the *Davis* and *Brown* Courts held article 42.12, section 5(c) and article 37.07, section 3(a) had to be read and construed together because they both concerned admissibility of evidence at punishment. *Davis,* 968 S.W.2d at 372 (quoting *Brown,* 716 S.W.2d at 949). Unlike article 42.12, section 5(c) discussed in these cases, article 42.12, section 4 does not concern the admissibility of punishment evidence. However, it does set predicate findings the jury must make before considering whether to recommend probation. Similarly, article 37.07, section 3(a) affects what a jury may consider in assessing punishment. Therefore, we find *Davis* and *Brown* sufficiently analogous to guide us.

**17.** *Compare* Act of May 31, 1981, 67th Leg., R.S., ch. 639, § 2, 1981 Tex. Gen. Laws 2466 ("When ... the punishment assessed by the jury shall not exceed ten years, the jury may recommend probation ... upon written sworn motion made therefor by the defendant, filed before the trial begins.... In no case shall probation be recommended by the jury except when the sworn motion and proof shall show, and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or any other state ....") *with* TEX.CODE CRIM. P. ANN. art. 42.12, § 4(a)-(e) (Vernon Supp.2000) ("A jury that imposes confinement ... may recommend to the judge that the judge ... place the defendant on community supervision.... A defendant is not eligible for community supervision under this section if the defendant: (1) is sentenced to a term of imprisonment that exceeds 10 years; ... (3) does not file a sworn motion ... or for whom the jury does not enter in the verdict a finding that the information contained in the motion is true.... A defendant is eligible for community supervision under this section only if before the trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony ..., and the jury enters in the verdict a finding that the information in the defendant's motion is true.").

**18.** *See Mock,* 848 S.W.2d at 225.

**19.** *See Mendiola v. State,* 21 S.W.3d 282, 285 (Tex.Crim.App.2000).

*State,* 991 S.W.2d 427, 430 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

### Conclusion

We conclude that nothing in article 42.12, section 4 makes evidence of the defendant's suitability for probation irrelevant per se.

### iii. "Battle of the experts" and Rule 403

The *Ortiz* Court established the applicable standard:

[T]estimony relevant to the trappings of probation *may* be excluded, within the trial court's discretion, where it might precipitate a distracting inquiry into the relative merits of probation versus incarceration. This is a far cry from holding that psychiatric testimony focusing on so-called suitability for probation, where that has been made an issue in the punishment phase of the case, will *invariably* be more confusing or prejudicial than probative, *as a matter of law.*[20] In fact, *Schulz, Logan,* and *Brown* all held that the record supported the trial court's exercise of discretion to *exclude* psychiatric testimony relevant to probation. *None holds that the trial court has no discretion to admit such testimony, should it find it is helpful to the jury,* and that its probative value was not *substantially* outweighed by *unfair* prejudice or confusion of the issues. Questions of admissibility under Rules 702 and 403 are for the trial court in the first instance.... So long as the record provides a rational basis to support the trial court's judgment, pursuant to Rule 702, that expert testimony will assist the jury (or its judgment that it will *not*), ... the appellate court cannot conclude *de novo* that the evidence is admissible (or inadmissible). Nor should the appel-

late courts conduct a *de novo* review of the trial court's decision that the evidence is inadmissible (or admissible) because it will only, (or because it will not), *e.g.,* confuse the issues under Rule 403. In short, under the Rules of Criminal Evidence, whether a "battle of experts" will more likely perplex than assist a jury is a case-specific inquiry, to be conducted at the trial level and measured on appeal only for abuse of discretion.

834 S.W.2d at 348 (italics in original; underlining added for emphasis).

The State never mentioned rule 403 below, but, given the *Ortiz* Court's interchangeable use of the terms, we conclude the State's reference to the "battle of the experts" raised the issue.

### 3. The exclusion of Dr. Cole's testimony on recidivism rates for incest offenders

The broad language of current article 37.07, section 3(a) applies to this cause. *See* Tex.Code Crim. P. art. 37.07, § 3(a). We have already held this language grants wide latitude in the admission of evidence deemed relevant. Therefore, Dr. Cole's testimony that only three percent of treated incest offenders reoffend, as opposed to seven percent of treated pedophiles and 19 percent of treated rapists, was not per se inadmissible under this article, and it was not per se irrelevant under article 42.12, section 4. It certainly was not inadmissible under rule 702. It was definitely relevant, as the quoted testimony above and the discussion below show. Because Dr. Cole's was relevant and was not per se inadmissible, it could have been properly excluded under rule 403 only if its probative value was *"substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of

20. *Ortiz* was controlled by the pre–1989 version of article 37 .07, section 3(a). *Ortiz,* 834 S.W.2d at 346 n. 7. While reaffirming that probation-suitability evidence was per se irrelevant, the *Ortiz* Court held the defendant had opened the door to it herself. *Id.* at 346. This is why the *Ortiz* Court proceeded to weigh the testimony's relevancy under rule 403. *Id.*

cumulative evidence." TEX.R. EVID. 403 (emphasis added); *Ortiz*, 834 S.W.2d at 348. We hold that it would have been an abuse of discretion to conclude that the probative value of the Vermont study was outweighed, much less "substantially outweighed," by these factors.

The probative value of the Vermont study was great. It bore heavily on one of the ultimate punishment-stage issues in this and every contested case in which probation is sought—whether to imprison the defendant or give him probation. It would have helped the jury determine whether appellant was a suitable probation candidate or might reoffend, issues the State raised by eliciting on cross-examination that (1) "total risk reduction" was the reason sex offenders are not allowed around children (also confirmed in Dr. Engman's direct examination); (2) Dr. Cole would "not necessarily" be surprised if sex offenders "promised they wouldn't do it but they did it again" because their illegal sexual behavior is like a "pendulum"; (3) there is no 100 percent guarantee that sex offenders will not reoffend "while they are out walking around being exposed to other children" (again confirmed in Dr. Engman's direct examination); (4) the risk of reoffending against "small, young, female children" would be drastically reduced by removing the offender to a setting without children, such as prison; and (5) the reoffense rate for sex offenders in T.D.C.'s prison treatment program is less than 10 percent, though most sex offenders go untreated in prison.

Appellant again tried unsuccessfully to ask the recidivism rate for treated incest offenders *after* the State elicited the above testimony. Dr. Cole also testified without objection that (1) most sex offenders do not receive needed treatment in prison; (2) untreated sex offenders are more likely to reoffend than are treated ones; (3) receiving treatment can be a condition of probation for a sex offender; and (4) it is in any sex offender's best interest to receive treatment. This testimony would have been more persuasive if the jury had also heard his excluded testimony about the effect of treatment in Vermont.

Additionally, though it came out on appellant's cross-examination, Dr. Engman testified incest offenders' behavior can escalate to children outside the family; the judge then overruled as irrelevant appellant's question of what percentage of treated sex offenders in T.D.C. reoffend. That testimony further shows that appellant's suitability for probation was the primary issue for both parties. Therefore, testimony that appellant's specific category of sex offender had a three-percent recidivism rate would have helped the jury in determining appropriate punishment. For the same reason, this testimony's probative value would not have been substantially outweighed by the danger of confusion, as the State had already placed the general "reoffense" issue before the jury: if this was a "battle of the experts," it was invited by the State's eliciting testimony of the recidivism rate of sex offenders treated in T.D.C., that no guarantee existed that appellant would not reoffend, and similar questions.

#### 4. The State's authority

The State relies on three cases to show the trial judge did not abuse her discretion in excluding Dr. Cole's testimony. It first cites *Rodriguez v. State*, which was merely a per curiam opinion (with two judges dissenting) dismissing the petition for discretionary review as improvidently granted. 815 S.W.2d 717, 717 (Tex.Crim.App. 1991). The Court did not rule on the merits. There was no holding on anything.

The State also relies on *Parra Gonzales v. State*, which upheld the exclusion of a psychiatrist's testimony, based on about five hours of interviews with the defendant, that the defendant was not a continuing threat and was "worthy" of probation. 756 S.W.2d 413, 416–17 (Tex.App.—El Paso 1988, pet. ref'd), *overruled on same grounds, Mock v. State*, 848 S.W.2d 215,

225 (Tex.App.—El Paso 1992, pet. ref'd). The court held the psychiatrist's opinions were not admissible mitigation evidence under pre–1989 Code of Criminal Procedure article 37.07, section 3(a). *Parra Gonzales,* 756 S.W.2d at 417. The El Paso Court of Appeals later repudiated the holding in *Parra Gonzales.* It concluded that *Parra Gonzales* had been effectively overruled in this respect by the 1989 amendment of article 37.07, section 3(a). *Mock,* 848 S.W.2d at 225 (overruling *Parra Gonzales* to hold trial judge did not abuse discretion in allowing State to elicit testimony from defendant's probation officer that there "was no chance of rehabilitating" defendant).

Finally, we distinguish *Whitton v. State,* on which the State also relies, because the psychiatrist's excluded opinion was only that probation would be better for the defendant's psychological needs than prison. 711 S.W.2d 129, 130–32 (Tex.App.—Eastland 1986), *pet. ref'd,* 730 S.W.2d 754 (Tex.Crim.App.1987) (commenting per curiam on other grounds). Here, the excluded expert testimony was of a completely different nature. Additionally, *Whitton* was decided when article 37.07, section 3(a) had less broad language than it does now.

### C. Conclusion

We realize that we may not second-guess the trial judge's ruling, as long as the record provides a rational basis for it. *See Ortiz,* 834 S.W.2d at 348. However, we find no basis on this record for excluding Dr. Cole's testimony on recidivism rates for treated incest offenders, especially when the State itself put recidivism in issue.

We do not mean to hold, however, that but for the State's questions opening the door, there would be no error. We need not decide that issue today. We can decide that issue if and when it reaches us on a different record. We point out to the bench and bar that the important changes in article 37.07, section 3(a) may make evidence like this admissible, despite much

case law holding similar evidence per se inadmissible under the prior and more restrictive version of that statute. The trial judge's broad discretion should perhaps be exercised with a view toward the law's broad, consistent, and longstanding trend to admit more and more evidence—for both sides—at the punishment stage.

We hold the trial judge abused her discretion in excluding Dr. Cole's testimony about the Vermont study. *Cf. Wilkerson v. State,* 766 S.W.2d 795, 799–800 (Tex. App.—Tyler 1987, pet. ref'd) (in case predating *Murphy,* holding exclusion of opinion of psychiatrist, who had consulted with defendant over seven times, that defendant's problems "would be manageable over a 10–year probation" was reversible error in aggravated sexual assault case, despite being cumulative of lay witnesses' good-character evidence).

### D. Harm

#### 1. Standard

This is non-constitutional error under Tex.R.App. P. 44.2(b). "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Id.* "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

#### 2. Evidence of harm

One of the State's main themes in closing was that appellant presented a dangerous risk of offending children outside the family if placed on probation. The State (1) emphasized Dr. Engman's testimony that she knew of incest offenders whose behavior escalated to children

outside the family, (2) speculated appellant might have other victims besides the two for which there was evidence, and (3) repeatedly argued that appellant's behavior would similarly "escalate," and thus imprisonment was necessary to protect other children. This argument emphasizes the importance of the excluded testimony. Additionally, Dr. Cole's testimony that 10 percent of sex offenders treated in T.D.C. reoffend was not the same as his excluded testimony: 10 percent of a general category is a far cry from three percent of appellant's specific category. The likelihood that appellant, as a treated incest offender, would reoffend was hotly contested, as evidenced by the State's cross-examination and by both closing arguments.

Finally, there is evidence the jury considered probation. It sent a note to the judge asking, "If you choose probation, and maximum time is 10 years, does this mean a total of 10 years probation, or combined of 50 for all five offenses? Would we add or stack years to determine total years probation?" This indicates that some jurors thought appellant was too dangerous a risk to have only 10 years probation, which might not have been so if the excluded evidence of the Vermont study had been admitted.

We recognize that (1) appellant testified he would abide by probation conditions and was making progress in counseling, (2) one of his daughters testified she did not fear his being around her own child, and (3) two daughters testified they thought he would not sexually molest a child "at the church" or "walking around the court-house." However, this testimony came from interested, family, lay witnesses, not from appellant's treating expert. It was no substitute for Dr. Cole's testimony about the Vermont study.

Given this record, we cannot say we have "fair assurance that the error did not influence the jury, or had but a slight effect." *See Johnson,* 967 S.W.2d at 417. Therefore, we hold the error was harmful. TEX.R.APP. P. 44.2(b).

We reverse the portion of the judgment assessing punishment and remand the cause for a new punishment hearing. *See* TEX.CODE CRIM. P. ANN. 44.29(b) (Vernon Supp.2000).