Jerrell S. REED, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00169–CR.

Court of Appeals of Texas,
Texarkana.

Submitted May 17, 2001.

Decided June 1, 2001.

---

Patrick K. Short, Rockwall, for appellant.

Henry Whitley, Special Prosecuting Attorney, Big Sandy, Marcus D. Taylor, Wood County Dist. Attorney, Quitman, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Jerrell S. Reed, Jr. appeals his conviction on a plea of guilty to the charge of indecency with a child. In the same proceeding, Reed also pled guilty to three other indecency with a child offenses and one aggravated sexual assault of a child offense. These five offenses involved five different victims. Reed has also filed appeals from the other three indecency with a child convictions and from the aggravated sexual assault conviction. We address each of those appeals by a separate opinion.

Although not the typical procedure, Reed first pled guilty before the trial court with the understanding that if after presenting evidence before the bench, he was unsatisfied with the sentences the trial court assessed, he would have the opportunity to withdraw his pleas and request a jury trial. In addition, Reed agreed to have the trial court take into account in its punishment assessment three additional uncharged indecency with a child offenses and one additional uncharged aggravated sexual assault of a child offense. *See* TEX. PEN.CODE ANN. § 12.45(a) (Vernon 1994).

After hearing evidence, the trial court assessed Reed's punishment at three twenty-year sentences and one ten-year sentence for the indecency with a child offenses, and a thirty-year sentence for the aggravated sexual assault of a child offense. The sentences were ordered to run concurrently.

Reed then withdrew his pleas. A jury was selected, and Reed pled guilty before the jury. After hearing evidence, the jury refused Reed's request to be placed on community supervision. It assessed his punishment at three ten-year sentences and one five-year sentence for the indecency with a child offenses, and a twenty-three-year sentence for the aggravated sexual assault of a child offense. The trial court ordered that his sentences run concurrently.

Reed contends the trial court erred in excluding evidence regarding (1) the use of required polygraph tests as a condition of community supervision and (2) the results of a polygraph test he took. At the trial before the bench, Reed offered the testimony of Kirk Meehan, the director of a polygraph testing company. The substance of Meehan's testimony was that he is trained and certified to administer polygraph tests; that he has performed approximately 2,000 polygraph tests on sex offenders; that he has performed court-ordered polygraph tests as part of an of-

fender's community supervision for the purpose of determining whether the offender has violated a condition of that supervision; and that if the trial court placed Reed on community supervision, he could successfully test Reed to determine if he violated any condition of that supervision.

Meehan also testified that he gave Reed a polygraph test and specifically asked him if he had committed an offense against any child that had not been alleged by the State in these proceedings. Meehan testified that in his professional opinion, Reed was being truthful when he responded that he had not.

Also at the trial before the bench, Reed offered the testimony of Liles Arnold, a licensed professional sex offender treatment provider who has been treating sex offenders for ten years. He testified he met with Reed four separate times over a two-month period. He testified that based on his assessments, he believed that Reed fits the profile of a sex offender who could comply with the conditions of community supervision. Specifically, he testified that if the trial court placed Reed on community supervision, it would need to put him on an intensive supervision program, including long-term court-ordered therapy, restrictions on his access to minors, and regular polygraph tests to monitor his compliance with the conditions of his supervision.

Prior to the trial before the jury, the State presented a motion in limine regarding evidence of polygraph tests. The trial court granted the State's motion. At the close of testimony, Reed offered Meehan's and Arnold's testimonies from the trial before the bench as an offer of proof. The trial court took judicial notice of that testimony, but reaffirmed its ruling excluding the evidence.

Initially, it is important to note that Reed is complaining about the exclusion of polygraph evidence at the trial before the jury. This evidence was before the trial court at the trial before the bench, but was excluded from the jury. Reed's offers of proof were largely the testimonies of Meehan and Arnold at the trial before the bench, but he also made an additional offer of proof when Arnold testified at the trial before the jury.

■ ■ Reed first contends the trial court erred in excluding Meehan's testimony that Reed answered truthfully when he responded, as part of a polygraph test, that he had not committed offenses against children other than those alleged by the State at trial. The contention is without merit. The existence and results of a polygraph test are inadmissible for all purposes, even if the state and the defendant agree and stipulate to use the results of the polygraph test at trial. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990); *Nethery v. State*, 692 S.W.2d 686, 700 (Tex.Crim.App.1985); *Fernandez v. State*, 564 S.W.2d 771, 773 (Tex.Crim.App. [Panel Op.] 1978). Here, the State objected to the admission of the results of the polygraph test and the trial court acted properly in excluding the evidence.

Reed also contends the trial court should have admitted Meehan's and Arnold's testimonies regarding the use of required polygraph tests as a condition of community supervision for sex offenders. Trial courts sometimes require sex offenders to submit to polygraph tests as a condition of community supervision, *see Greer v. State*, 999 S.W.2d 484, 486 (Tex.App.— Houston [14th Dist.] 1999, pet. ref'd), *cert. denied*, 531 U.S. 877, 121 S.Ct. 185, 148 L.Ed.2d 128 (2000); *Marcum v. State*, 983 S.W.2d 762, 766 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd), and such requirements have been upheld. *Ex parte Ren-*

*fro*, 999 S.W.2d 557, 561 (Tex.App.—Houston [14th Dist.] 1999, orig. proceeding [leave denied] ). However, the specific question of whether a jury can be informed about the possible use of such a condition has not been addressed in Texas.

Reed argues the jury was informed about numerous possible conditions of community supervision and that, in fairness, it should have been informed of the possible condition of required polygraph tests. Reed presented testimony from Daniel Christian, a Wood County community supervision officer, regarding the possible conditions of community supervision outlined in TEX.CODE CRIM.PROC.ANN. art. 42.12, § 11 (Vernon Supp.2001). Further, in Reed's offer of proof, Meehan and Arnold testified that courts often require sex offenders to submit to polygraph tests as a condition of community supervision. Finally, on cross-examination and redirect examination of Dr. Carla Herren, a psychologist called by the State to testify about the likelihood a pedophile will reoffend, Reed and the State elicited testimony regarding the possible conditions of community supervision outlined in Article 42.12, § 11.

Reed further contends the Rules of Evidence make such evidence admissible. Specifically, he contends that under TEX. R.EVID. 401, evidence that courts sometimes require polygraph tests as a condition of community supervision was relevant to the jury's decision whether to grant his request for community supervision and thus was admissible under TEX. R.EVID. 402. He also contends Meehan and Arnold had scientific, technical, or other specialized knowledge, which was admissible under TEX.R.EVID. 702 because it would have assisted the jury in evaluating his request for community supervision.

■ Article 37.07 of the Texas Code of Criminal Procedure allows the state and the defendant to offer evidence as to "any matter the court deems relevant to sentencing." TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2001). The trial court's discretion is limited by the Texas Rules of Evidence, except as otherwise provided by Article 37.07, § 3(a) itself. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App.1999) ("[i]n addition to the Rules of Evidence, article 37.07 section 3(a) governs the admissibility of evidence during the punishment stage"). The trial court's decision to admit or exclude evidence at the punishment phase is subject to review for an abuse of discretion. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996).

In discussing what evidence is "relevant" at the punishment phase, the Texas Court of Criminal Appeals has written:

In reality, what is "relevant" to determining proper punishment is more a question of policy than of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately, outside of Article 37.07, § 3(a), supra, it has given no clear guidance as to what considerations should inform the jury's punishment decision.

... In the policy gap left by the Legislature, this Court has held evidence of "the circumstances of the offense itself or ... the defendant himself" to be admissible at the punishment phase.

*Murphy v. State*, 777 S.W.2d 44, 62–63 (Tex.Crim.App.1988) (op. on reh'g) (citing *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex. Crim.App. [Panel Op.] 1979)). The court has subsequently broadened that formulation by holding that punishment evidence is relevant if it is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.

*Rogers*, 991 S.W.2d at 265 (citing TEX. R.EVID. 401).

We are confronted here with the admissibility of evidence of a possible condition of community supervision, i.e., required polygraph tests. In *Murphy*, the court stated that a trial court need not inform the jury of any condition of community supervision. *Murphy*, 777 S.W.2d at 66. The court's statement was based on the idea that "[r]equirements and the purpose of probation are a matter of law and common knowledge." *Id.* (quoting *Logan v. State*, 455 S.W.2d 267, 270 (Tex.Crim.App. 1970)). However, the court acknowledged statements in older cases that the better practice is to include such conditions in the instructions to the jury. *Id.* at 65 (citing *Flores v. State*, 513 S.W.2d 66, 69 (Tex. Crim.App.1974)).

In *Brown v. State*, 741 S.W.2d 453, 454 (Tex.Crim.App.1987), the defendant offered the testimony of a community supervision officer regarding possible conditions of community supervision, but the trial court excluded the evidence. The Texas Court of Criminal Appeals held that the trial court did not err because admitting this evidence would allow the State to offer evidence of procedures and programs available if the defendant were imprisoned. *Id.* at 455. Such an inquiry would lead to a confusing "battle of the experts" at the punishment phase. *Id.* In *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex.Crim.App.1992), the court construed *Brown* as holding that "testimony relevant to the trappings of probation *may* be excluded, within the trial court's discretion, where it might precipitate a distracting inquiry into the relative merits of probation versus incarceration."

■ Thus, while *Murphy* and *Brown* did not make evidence of the conditions of community supervision inadmissible, they did cast doubt on the need and usefulness of such information. In light of *Murphy*

and *Brown*, then, the trial court's exclusion of evidence that polygraph tests are sometimes required as a condition of community supervision in cases involving sex offenders was not an abuse of discretion, even when it admitted evidence of other possible conditions.

However, *Murphy* and *Brown* were predicated on a version of Article 37.07, § 3(a) that is different from the current version. In *Peters v. State*, 31 S.W.3d 704, 716 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd), the First Court of Appeals concluded that the 1989 and 1993 amendments to Article 37.07, § 3(a) have broadened the scope of that statute to make admissible certain types of evidence that *Murphy* held were inadmissible. Specifically, *Peters* held that the changes to Article 37.07, § 3(a) made evidence of the defendant's suitability for community supervision admissible. *Id.* at 716–17. *Murphy* had held that such evidence was inadmissible per se. *Murphy*, 777 S.W.2d at 67. Thus, if the court's conclusion in *Peters* is correct, it also casts doubt on the continued viability of *Murphy*'s conclusion that a trial court need not inform the jury about possible conditions of community supervision.

Nevertheless, a threshold issue of admissibility is relevance, which we have already stated is a function of policy based on whether the evidence is helpful to the jury in determining the appropriate sentence. *Rogers*, 991 S.W.2d at 265; *Murphy*, 777 S.W.2d at 63. The Texas Court of Criminal Appeals has erected a policy-based barrier to the admission of the existence and results of polygraph tests. *Tennard*, 802 S.W.2d at 683–84; *Nethery*, 692 S.W.2d at 700; *Fernandez*, 564 S.W.2d at 773; *see also Landrum v. State*, 977 S.W.2d 586, 586–87 (Tex.Crim.App.1998) (Meyers, J., dissenting from the court's refusal to grant the appellant's petition for

discretionary review). It has done so because of concerns about the reliability and undue persuasiveness of polygraph tests. *Romero v. State,* 493 S.W.2d 206, 210–11 (Tex.Crim.App.1973); *Long v. State,* 10 S.W.3d 389, 398 (Tex.App.—Texarkana 2000, pet. ref'd); *see also* 2 TEXAS CRIMINAL PRACTICE GUIDE § 61.03[2][c] (Matthew Bender & Co. ed., Dec. 1996). Those concerns are relevant to the specific issue here—whether the jury can be informed that courts sometimes require polygraph tests as a condition of community supervision.

If a jury will be unduly persuaded that a polygraph test can detect whether a person is being truthful regarding his culpability for an offense, then a jury could be unduly reassured that a polygraph test can detect whether a person is being truthful regarding his compliance with the terms of community supervision. Also, the concerns expressed in *Brown*—that evidence of possible conditions of community supervision might lead to a confusing "battle of the experts"—are relevant here. Meehan testified that he could successfully test Reed to determine if he had violated any condition of his supervision. Had the trial court admitted this testimony, the State could have introduced evidence regarding the reliability of polygraph tests. Such an inquiry would lead the jury away from the relevant issue at the sentencing phase-the appropriate punishment of Reed for these offenses.

Thus, while it could be said that informing the jury about possible conditions of community supervision might be helpful to it in determining the appropriate sentence, it would be difficult to inform the jury that the defendant might be required to submit to regular polygraph tests without implicating the reliability and undue persuasiveness concerns motivating the general barrier to admissibility of polygraph evidence.

Reed contends that the jury should be allowed to weigh the reliability of polygraph tests and that it is competent to evaluate its persuasiveness. However, the Texas Court of Criminal Appeals has concluded otherwise, at least with regard to the results of polygraph tests and the fact that a person has taken a polygraph test. Under these facts, therefore, the trial court did not abuse its discretion in excluding evidence that courts sometimes require polygraph tests as a condition of community supervision.

Reed contends, however, that the trial court should have admitted this evidence because the State opened the door to it. In certain limited circumstances, trial courts have allowed a party to introduce polygraph evidence after the other party has introduced such evidence without objection. *See Long,* 10 S.W.3d at 398–99 (citing *Lucas v. State,* 479 S.W.2d 314, 315 (Tex.Crim.App.1972), and *Patteson v. State,* 633 S.W.2d 549, 551–52 (Tex.App.—Houston [14th Dist.] 1982, no pet.)). Those cases have no applicability here because the State did not attempt to introduce polygraph evidence.

■ The broader holding of the *Long* case is that the rule of optional completeness does not operate to allow a party to introduce polygraph evidence when the other party introduces such evidence without objection. *Long,* 10 S.W.3d at 399. Even if it did, we conclude that the State did not open the door to this evidence. Reed refers to the following exchanges during the State's cross-examination of Arnold:

Q. How are you going to know if he's honest in treatment?

A. I have testing procedures to assess that.

Q. And what testing procedure do you have for that?

[Defense Attorney]: May I approach, Judge?

THE COURT: Gentlemen, counsel, if both would approach.

(Bench conference.)

[Prosecutor]: I'm going to get real specific.

[Defense Attorney]: You're going to open the door.

THE COURT: He's talking about lie detector tests.

[Prosecutor]: I'm talking about—

THE COURT: That's what he's getting ready to talk about.

[Prosecutor]: I'm not going to talk about that.

THE COURT: Ask a more specific question.

The State proceeded to question Arnold about the use of penile plethysmographs, a device used to measure physical changes in the penis in response to certain visual or audio stimuli. The State then asked Arnold the following:

Q. Okay. As a matter of fact, that's [the penile plethysmograph] the only objective criteria you can have for dealing with deviants, isn't it?

[Defense Attorney]: May I approach, Judge?

THE COURT: Yes, you may.

(Bench conference.)

[Defense Attorney]: I think he just opened the door by asking the question, and I think—

[Prosecutor]: Your Honor—

[Defense Attorney]: Excuse me. Excuse me.

THE COURT: Let him finish.

[Defense Attorney]: Your Honor, you were very clear in chambers to me and to [the prosecutor] about the polygraph; and I think by asking the question, I don't care what the answer is, he has opened up the door to the connection of polygraph evidence. I would agree that I can't bring in the fact that he's already taken one and passed, but I will—now, I'm bringing postconviction [sic].

THE COURT: Your response.

[Prosecutor]: Response is, your Honor, he acknowledged that's the only criteria; and he acknowledged as true that's the only criteria for dealing with—

[Defense Attorney]: He hasn't acknowledged any literature.

THE COURT: If you would ask that question, go ahead. I'm not ruling that the door is open to this because I'm not allowing that evidence to come in. If you want to rephrase your question, you may.

[Defense Attorney]: So the record is clear, you're overruling my objection to—

THE COURT: I'm not allowing you to go into what I've excluded.

[Defense Attorney]: Okay. Thank you.

Reed requested the opportunity to make an offer of proof, which the trial court deferred to the next recess. The State then questioned Arnold concerning two scholarly articles in which the authors took the position that the penile plethysmograph is the only objective test for diagnosing, understanding, and treating sex offenders.

At a recess, the trial court allowed Reed to make an offer of proof regarding the excluded polygraph evidence. During the offer of proof, Arnold testified that he used Reed's polygraph results in formulating a recommended treatment plan; that the polygraph results helped him determine that Reed's pedophilia "has been a late-onset-in-life occurrence"; that he would recommend requiring polygraph tests as a condition of Reed's community supervision;

and that most courts use polygraph tests as a tool in assessing whether a person is complying with the conditions of their supervision. The trial court overruled Reed's objection, concluding that the State had not opened the door to polygraph evidence and that its initial ruling excluding polygraph evidence was still in force.

Reed's argument that the State opened the door to testimony regarding polygraph tests stems from the faulty premise that a polygraph test is objective. As we said earlier, polygraph evidence is inadmissible precisely because it is not objective, but rather subjective, unreliable, and unduly persuasive. *Romero*, 493 S.W.2d at 210–11; *Long*, 10 S.W.3d at 398; *see also* 2 Texas Criminal Practice Guide § 61.03[2][c]. Assuming a penile plethysmograph is an objective tool, as the State sought to elicit, the State's questions could not have opened the door to evidence regarding the use of a subjective tool. Even if it could be argued that a penile plethysmograph is not an objective tool, an argument that Reed did not make either at trial or on appeal, the trial court did not abuse its discretion in refusing to admit evidence of one subjective tool, a polygraph, simply because the State elicited testimony about another subjective tool, a penile plethysmograph.

Further, the focus of the State's cross-examination was to establish that the only objective way of diagnosing and treating a sex offender is to use a penile plethysmograph. In contrast, the focus of Reed's objection and his offers of proof is that polygraph tests are used to monitor compliance with the conditions of community supervision. Thus, the State's cross-examination related to issues of diagnosis and treatment, while Reed's evidence related to issues of compliance with supervision. The trial court cautiously warned the prosecutor when he asked questions likely to elicit testimony regarding polygraph tests, instructed him to ask more specific questions or to lay a firmer predicate, and never allowed evidence of polygraph tests to come before the jury.

It is true that Arnold testified he used the results of Reed's polygraph to determine that Reed exhibits late-onset-in-life pedophilia. Arguably, this demonstrates that a polygraph test can also be used as a diagnostic tool. We have already stated, however, that the results of Reed's polygraph test were inadmissible for any purpose. Further, Arnold's opinion that Reed exhibited late-onset-in-life pedophilia was already before the jury. The State's cross-examination did not attempt to explore the basis of that opinion and thus did not open the door to Arnold's testimony that he used a polygraph test to diagnose Reed as exhibiting late-onset-in-life pedophilia.

It is also true that when the State asked whether he agreed that the penile plethysmograph is the only objective test for understanding and treating sex offenders, Arnold responded that he did not agree. Additionally, it is true that during Arnold's testimony at the trial before the bench, which Reed included in his offer of proof, Arnold stated that as part of Reed's therapy he would need to submit to polygraph testing "as a means of assessing *his sexual interest* and his level of honesty." (Emphasis added.) Arguably, this demonstrates that a polygraph test can be used as a treatment tool. However, one isolated and rather ambiguous statement, without more, is insufficient to make the trial court's ruling—that the State did not open the door to the admission of polygraph evidence—an abuse of discretion.

■ Finally, Reed argues that because the State failed to object to Meehan's and Arnold's testimonies at the trial before the bench, the evidence should have been ad-

mitted at the trial before the jury. He offers no authority for this position; thus, it is *improperly briefed*. TEX.R.APP.P. 38.1(h).

■ Nevertheless, the trial court clearly contemplated that the trial before the bench would be separate and distinct from the trial before the jury. The trial court allowed Reed to withdraw his plea after it pronounced sentence, and Reed could have elected to proceed with a complete trial on the merits before a jury. In any event, polygraph evidence is inadmissible at a bench trial as well as at a jury trial. *See Cardenas v. State*, 960 S.W.2d 941, 947 (Tex.App.—Texarkana 1998, pet. ref'd) (in a nonjury trial, counsel erred in failing to object to a presentence investigation report containing the results of a polygraph test given to the defendant because such evidence is inadmissible); *Patteson*, 633 S.W.2d at 551 (the defendant successfully, but erroneously, persuaded the trial court that polygraph evidence was admissible in a nonjury trial). Thus, Reed cannot hope to bootstrap the admission of polygraph evidence at the trial before the jury on the State's failure to object to its admission at the trial before the bench.

The judgment is affirmed.

GRANT, Justice, concurring.

One of the greatest responsibilities of our judicial system is the fair and just sentencing of those convicted. Whether it be the jury or the trial court that assesses the punishment, all factors should be fully considered. Because sentencing involves the life, or a portion of the life of the individual being sentenced, the sentencing process should not be regarded as a waste of judicial time and resources. Courts should take care in exercising fairness in admitting evidence that is relevant both pro and con in this proceeding and is informative for determining the appropriate punishment.

I agree with the majority opinion that evidence regarding polygraph tests is not and should not be admissible to establish the truthfulness or untruthfulness of testimony or statements. However, if the terms of community supervision are admissible in the proceeding and if the evidence shows that there is a possibility or probability that the convicted party will be required as a part of the terms of his community supervision to take polygraph tests, this should be admissible.

We should avoid adding new legal fictions to the law, and allowing some of the terms of community supervision to be known by the jury and to deny others is no more than a legal fiction. If this procedure is deemed important enough by the State of Texas to administer it to a person on community supervision, then this factor should be revealed to a sentencing jury. This does not mean that the evidence should be opened up to the reliability or unreliability of this type of testing, but this should not preclude the jury from being permitted to have knowledge that such testing is given.

I do not take the position that this amounts to reversible error in this case, but I do urge the courts to be consistent in allowing all of the terms of community supervision or anticipated terms of community supervision to be admitted. By anticipated terms and conditions of community supervision, I mean those that a community supervision officer testifies as likely to be a part of the terms in the type of case on trial based on the usual and customary terms and conditions in that court.

I respectfully concur on this issue.