02-09-360-CR
















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

 

NO. 02-09-00360-CR

 

 


 
 
 JOHNNIE THEDDEUS GARDNER
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

------------

 

FROM CRIMINAL
 DISTRICT COURT NO. 2 OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          Appellant
Johnnie Theddeus Gardner appeals the trial court’s revocation of his community
supervision and its decision to sentence him to eight years’ confinement for
aggravated sexual assault of a child.  In
a single point, he argues that the court erred by admitting and relying on evidence
of his failed polygraph examinations. 
Because appellant forfeited his complaint about the admission of the polygraph
results, we affirm. 

Background Facts

          A Tarrant
County grand jury indicted appellant for multiple counts of aggravated sexual
assault of a child.  A jury convicted him
of one count, assessed his punishment at ten years’ confinement, and recommended
that he be placed on community supervision. 
The trial court entered a judgment ordering community supervision and imposed
several conditions, including some conditions particularly relating to sex
offenders.[2]  Appellant appealed his conviction but later
obtained dismissal of the appeal.[3]

          Three years later, the State filed a
petition to revoke appellant’s community supervision, alleging that appellant
violated the conditions by (1) failing to complete psychological counseling and
treatment within three years of its initiation, (2) having contact with minors,
(3) living within 1,000 feet of a “child safety zone,” (4) going within 1,000
feet of a place where children under seventeen years old commonly gather, (5)
failing to install software to block access to sexually explicit material on
two computers in his residence, and (6) failing to notify his supervision
officer within five days of changing employment.  The trial court held a hearing on the State’s
petition, and appellant pled true to the first two allegations listed above and
not true to the four remaining allegations.

          The State presented evidence to
establish, among other facts, that appellant had lived with his sister in a
house that was approximately four doors down from a home daycare; that late one
night, he went to Sundance Square in Fort Worth, which his community
supervision officer considered a child safety zone; that he lacked progress in
psychological treatment; and that he had unauthorized contact with his children.[4]  The trial court found that the first four
allegations listed above were true, revoked appellant’s community supervision,
and assessed his punishment at eight years’ confinement.  Appellant filed this appeal.

Admission of Polygraph Results

          In his sole point, appellant contends,
“The trial court abused its discretion in imposing a sentence in reliance on
inadmissible evidence that Appellant had failed numerous polygraph exams during
his probation period.”  He argues, “To a
great extent the probation revocation hearing was trial by polygraph.”  During the hearing on the State’s petition to
revoke, while the prosecutor was questioning a community supervision officer, the
following exchange occurred:

          Q.  On any other day
throughout the approximately three-year term of his probation, was he allowed
contact with his children?

 

          A.  No, ma’am.

 

          Q.  Why was that?

 

          A.  He was in
constant violations of his conditions of bond, as in he was failing a polygraph
or noncompliance issues --

 

          [DEFENSE COUNSEL]: 
I’m going to object to any mention of polygraph, Judge.

 

          THE COURT:  We don’t
have a jury, this is just before me, so that’s overruled.

 

          Later in the hearing, as the following
excerpt shows, the State again asked the supervision officer about appellant’s
polygraph exams:

          Q.  Mr. Roberts,
specifically regarding the contact the Defendant had with his children, are
these -- these instances of contact, did he readily admit these to you?

 

          A.   No, this -- the
final admission came after the sixth polygraph of him having admitted to the
contact with his children.  Previous ones
before that have gone through various stories of whether he had contact or
not.  Pretty much continually denying it
until the sixth one.

 

          Q.  So he had showed deception on five previous
polygraphs and changed his story each time before he finally told the truth
after the sixth polygraph?

 

          A.   Yes, ma’am.

 

          Upon his counsel’s questioning,
appellant also testified about taking the monthly polygraph exams and about
admitting to improperly seeing his children only after taking five exams.  Then, during cross-examination of appellant
by the State, the following colloquy occurred:

          Q.  And, in fact, you
were having contact with [appellant’s son] while you were on probation, weren’t
you?

 

          A.  No, ma’am.

 

          Q.  Well, you
completed a series of polygraphs where you were asked about contact with him in
which you failed repeatedly, didn’t you?

 

          A.  Yes, ma’am.

 

          Q.  So you could not
pass a polygraph regarding having no contact with your son . . ., could you?

 

          A.  No, ma’am.

 

          Q.  And you could not
pass the polygraph until you finally --

 

          [DEFENSE COUNSEL]: 
Judge, we object.  The polygraph
is still inadmissible in court.  I know
it’s a probation revocation hearing, but we don’t have -- we don’t have anybody
here on the polygraph and we don’t know what questions were asked.

 

          THE COURT:  It’s
overruled.

 

          Q.  . . .  You could not pass a polygraph regarding
having contact with your other children until you finally admitted after the
sixth polygraph about that contact; is that correct?

 

          A.  I think it was
the fifth one.

 

          . . . .

 

          Q.  Right.  And, in fact, the last polygraph you failed
regarding your contact with [appellant’s son] was February 26th of 2009, wasn’t
it?

 

          A.  I’m not sure
about the dates, but . . .

 

          Q.  Does that sound
about right?

 

          A.  I failed all the
way up until I got incarcerated.

 

          . . . .

 

          Q.   . . .  You told the Judge in July you could have
completed your sex offender treatment?

 

          A.  And I -- and I
still -- and I would have.

 

          Q.  And yet you’re
still failing polygraphs?

 

          A.  Yes, ma’am.  I failed polygraphs, I -- I have a problem
taking them, I -- I overanalyze the situation, I get nervous.

 

The State and
appellant’s counsel then continued to ask appellant more questions about his
performance on the polygraph exams.[5]  Also, appellant used the polygraph results to
explain his answers to some questions that did not directly concern the
polygraph exams.

          Polygraph results are generally inadmissible for all purposes.  Nesbit
v. State, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007); Nethery v. State, 692 S.W.2d 686, 700
(Tex. Crim. App. 1985) (“Even if the State and the defendant agree and
stipulate to use the results of a polygraph at trial, we have held the
testimony to be inadmissible.”), cert.
denied, 474 U.S. 1110 (1986); Russell
v. State, 798 S.W.2d 632, 635 (Tex. App.—Fort Worth 1990, no pet.) (“The results
of polygraph examinations are excluded due to their inherent unreliability and
tendency to be unduly persuasive.”); see Reed
v. State, 48 S.W.3d 856, 864 (Tex. App.—Texarkana 2001, pet. ref’d) (“[P]olygraph
evidence is inadmissible at a bench trial as well as at a jury trial.”).  However, a defendant must
assert a proper, timely objection to the admission of polygraph results to
preserve error.  Jasso v. State, 112
S.W.3d 805, 813–14 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d)
(explaining that the “standard set by our high court for the timely assertion
of objections is both demanding and unforgiving”); see Graham v. State, 3 S.W.3d 272, 285 (Tex. App.—Fort Worth 1999,
pet. ref’d).

          To preserve a complaint for our
review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Tex.
R. Evid. 103(a)(1); Mosley v. State,
983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999). 
Also, with some exceptions that do not apply to this case, to preserve
error, a party must continue to object each time the objectionable evidence is
offered or obtain a running objection to the evidence.  Martinez
v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim. App. 1991)).  Thus, a trial
court’s erroneous admission of evidence will not require reversal when other
such evidence was received without objection, either before or after the
complained-of ruling.  Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998).  This rule
applies whether the other evidence was introduced by the defendant or the
State.  Id.

          Although appellant objected to the
first portion of the community supervision officer’s testimony that mentioned
the results of appellant’s polygraph tests and objected to a question in the
middle of his own testimony, he did not object to every question or answer that
disclosed the results, and he did not obtain a running objection to the
polygraph evidence.  His trial counsel
also elicited some of the evidence.  Nonetheless,
appellant argues that his first objection preserved error relating to all of
the polygraph testimony because “[f]urther objections were useless as counsel
could assume the trial court would make the same ruling in each instance.”  But in Leday,
the court of criminal appeals stated, 

In requiring an objection
every time the objectionable evidence is offered, we are in a minority of courts which do not follow the general rule
that the repetition of an objection is needless when the court’s ruling has
indicated that an objection to such evidence will definitely be overruled.  See
Wigmore on Evidence § 18 (Peter Tillers rev. 1983).  Our rule which requires objection to every
offer is sometimes called “the ‘futility rule’; that is, despite ruling of
judge that evidence is admissible, party must keep making futile objections on
pain of waiver.” 21 Charles Alan Wright & Kenneth W. Graham, Federal Practice & Procedure § 5039
n. 11.1 (Supp. 1998) (citing Texas cases). 
We have found that the general application of this rule has not proven
to be burdensome for defense counsel in many cases. 

 

Id. at 717–18 (emphasis added and
footnote omitted); see Lane v. State,
151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (relying on Leday to overrule an evidentiary issue); see also Long v. State, 10 S.W.3d 389, 399 (Tex. App.—Texarkana
2000, pet. ref’d) (explaining that the requirement of objecting each time
inadmissible evidence is offered “remains true with regard to testimony
regarding polygraph examination results”).

          Appellant relies on a 1992 opinion
from the Dallas Court of Appeals to support his argument that repeated
objections to evidence are not necessary to preserve error when they would be
useless or futile.  See Davis v. State, 831 S.W.2d 839, 845 n.2 (Tex. App.—Dallas 1992,
pet. ref’d); see also Graham v. State,
710 S.W.2d 588, 591–92 (Tex. Crim. App. 1986) (holding that error was preserved
because a repeated objection would have been futile); Cardenas v. State, 787 S.W.2d 160, 162 (Tex. App.—Houston [1st
Dist.] 1990, pet. ref’d) (relying on Graham
to hold that error was preserved).[6]  But we have not found an opinion from the
court of criminal appeals after Leday
in which our highest court retreated from its adoption of the statement that the
parties must “keep making futile objections on pain of waiver.”[7]  Leday,
983 S.W.2d at 718 & n.5; see Lane, 151 S.W.3d at 193.

          Based on Leday and the other cases cited above, we hold that appellant
forfeited his right to complain on appeal about the admission of evidence of his
polygraph results because he did not object each time the results were asked
about or obtain a running objection to evidence of the results.  See
Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a), Leday, 983 S.W.2d at 718–19.  We overrule his only
point.

Conclusion

Having overruled appellant’s sole point, we affirm the trial court’s
judgment.  

 

                                                                   
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                   
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON,
C.J.; GARDNER and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
November 4, 2010











[1]See Tex. R. App. P. 47.4.





[2]One
of the conditions required appellant’s 180-day confinement in jail. Another
condition required him to submit to a clinical polygraph test “as directed by
the supervision officer.”





[3]See Gardner v. State, No. 02-06-00045-CR,
2006 WL 563217, at *1 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op.,
not designated for publication).





[4]Appellant
offered evidence to contradict the State’s evidence and explain some of the
circumstances surrounding his acts while he was on community supervision.  Appellant does not challenge evidentiary
sufficiency, and his pleas of true justify the trial court’s revocation
decision; thus, we will not detail all of the evidence related to the State’s
allegations.  See Cole v. State, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.]
1979); Battles v. State, 626 S.W.2d
149, 150 (Tex. App.—Fort Worth 1981, no pet.). 





[5]In his brief,
appellant argues that “having been forced to respond,” he “asked some follow-up
questions about the State’s inquiries about the polygraphs.”





[6]Relying
on Graham, other courts of appeals
have reached similar conclusions.





[7]We
have also not found any opinion that discusses the apparent conflict between Graham and Leday (which was more recently decided).