

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00360-CR

JOHNNIE THEDDEUS GARDNER                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Johnnie Theddeus Gardner appeals the trial court's revocation of his community supervision and its decision to sentence him to eight years' confinement for aggravated sexual assault of a child. In a single point, he argues that the court erred by admitting and relying on evidence of his failed polygraph examinations. Because appellant forfeited his complaint about the admission of the polygraph results, we affirm.

---

[1]See Tex. R. App. P. 47.4.

**Background Facts**

A Tarrant County grand jury indicted appellant for multiple counts of aggravated sexual assault of a child. A jury convicted him of one count, assessed his punishment at ten years' confinement, and recommended that he be placed on community supervision. The trial court entered a judgment ordering community supervision and imposed several conditions, including some conditions particularly relating to sex offenders.[2] Appellant appealed his conviction but later obtained dismissal of the appeal.[3]

Three years later, the State filed a petition to revoke appellant's community supervision, alleging that appellant violated the conditions by (1) failing to complete psychological counseling and treatment within three years of its initiation, (2) having contact with minors, (3) living within 1,000 feet of a "child safety zone," (4) going within 1,000 feet of a place where children under seventeen years old commonly gather, (5) failing to install software to block access to sexually explicit material on two computers in his residence, and (6) failing to notify his supervision officer within five days of changing employment. The trial court held a hearing on the State's petition, and appellant

---

[2]One of the conditions required appellant's 180-day confinement in jail. Another condition required him to submit to a clinical polygraph test "as directed by the supervision officer."

[3]*See Gardner v. State*, No. 02-06-00045-CR, 2006 WL 563217, at *1 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op., not designated for publication).

2

pled true to the first two allegations listed above and not true to the four remaining allegations.

The State presented evidence to establish, among other facts, that appellant had lived with his sister in a house that was approximately four doors down from a home daycare; that late one night, he went to Sundance Square in Fort Worth, which his community supervision officer considered a child safety zone; that he lacked progress in psychological treatment; and that he had unauthorized contact with his children.[4]  The trial court found that the first four allegations listed above were true, revoked appellant's community supervision, and assessed his punishment at eight years' confinement.  Appellant filed this appeal.

### Admission of Polygraph Results

In his sole point, appellant contends, "The trial court abused its discretion in imposing a sentence in reliance on inadmissible evidence that Appellant had failed numerous polygraph exams during his probation period."  He argues, "To a great extent the probation revocation hearing was trial by polygraph."  During the

---

[4]Appellant offered evidence to contradict the State's evidence and explain some of the circumstances surrounding his acts while he was on community supervision.  Appellant does not challenge evidentiary sufficiency, and his pleas of true justify the trial court's revocation decision; thus, we will not detail all of the evidence related to the State's allegations.  *See Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979); *Battles v. State*, 626 S.W.2d 149, 150 (Tex. App.—Fort Worth 1981, no pet.).

hearing on the State's petition to revoke, while the prosecutor was questioning a community supervision officer, the following exchange occurred:

Q. On any other day throughout the approximately three-year term of his probation, was he allowed contact with his children?

A. No, ma'am.

Q. Why was that?

A. He was in constant violations of his conditions of bond, as in he was failing a polygraph or noncompliance issues --

[DEFENSE COUNSEL]: I'm going to object to any mention of polygraph, Judge.

THE COURT: We don't have a jury, this is just before me, so that's overruled.

Later in the hearing, as the following excerpt shows, the State again asked the supervision officer about appellant's polygraph exams:

Q. Mr. Roberts, specifically regarding the contact the Defendant had with his children, are these -- these instances of contact, did he readily admit these to you?

A. No, this -- the final admission came after the sixth polygraph of him having admitted to the contact with his children. Previous ones before that have gone through various stories of whether he had contact or not. Pretty much continually denying it until the sixth one.

Q. So he had showed deception on five previous polygraphs and changed his story each time before he finally told the truth after the sixth polygraph?

A. Yes, ma'am.

Upon his counsel's questioning, appellant also testified about taking the monthly polygraph exams and about admitting to improperly seeing his children only after taking five exams.  Then, during cross-examination of appellant by the State, the following colloquy occurred:

> Q.  And, in fact, you were having contact with [appellant's son] while you were on probation, weren't you?
>
> A.  No, ma'am.
>
> Q.  Well, you completed a series of polygraphs where you were asked about contact with him in which you failed repeatedly, didn't you?
>
> A.  Yes, ma'am.
>
> Q.  So you could not pass a polygraph regarding having no contact with your son . . ., could you?
>
> A.  No, ma'am.
>
> Q.  And you could not pass the polygraph until you finally --
>
> [DEFENSE COUNSEL]:  Judge, we object.  The polygraph is still inadmissible in court.  I know it's a probation revocation hearing, but we don't have -- we don't have anybody here on the polygraph and we don't know what questions were asked.
>
> THE COURT:  It's overruled.
>
> Q.  . . .  You could not pass a polygraph regarding having contact with your other children until you finally admitted after the sixth polygraph about that contact; is that correct?
>
> A.  I think it was the fifth one.
>
> . . . .

Q. Right. And, in fact, the last polygraph you failed regarding your contact with [appellant's son] was February 26th of 2009, wasn't it?

A. I'm not sure about the dates, but . . .

Q. Does that sound about right?

A. I failed all the way up until I got incarcerated.

. . . .

Q. . . . You told the Judge in July you could have completed your sex offender treatment?

A. And I -- and I still -- and I would have.

Q. And yet you're still failing polygraphs?

A. Yes, ma'am. I failed polygraphs, I -- I have a problem taking them, I -- I overanalyze the situation, I get nervous.

The State and appellant's counsel then continued to ask appellant more questions about his performance on the polygraph exams.[5] Also, appellant used the polygraph results to explain his answers to some questions that did not directly concern the polygraph exams.

Polygraph *results* are generally inadmissible for all purposes. *Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007); *Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985) ("Even if the State and the defendant agree and stipulate to use the results of a polygraph at trial, we have held the

_____

[5]In his brief, appellant argues that "having been forced to respond," he "asked some follow-up questions about the State's inquiries about the polygraphs."

testimony to be inadmissible."), *cert. denied*, 474 U.S. 1110 (1986); *Russell v. State*, 798 S.W.2d 632, 635 (Tex. App.—Fort Worth 1990, no pet.) ("The results of polygraph examinations are excluded due to their inherent unreliability and tendency to be unduly persuasive."); *see Reed v. State*, 48 S.W.3d 856, 864 (Tex. App.—Texarkana 2001, pet. ref'd) ("[P]olygraph evidence is inadmissible at a bench trial as well as at a jury trial."). However, a defendant must assert a proper, timely objection to the admission of polygraph results to preserve error. *Jasso v. State*, 112 S.W.3d 805, 813–14 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (explaining that the "standard set by our high court for the timely assertion of objections is both demanding and unforgiving"); *see Graham v. State*, 3 S.W.3d 272, 285 (Tex. App.—Fort Worth 1999, pet. ref'd).

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Also, with some exceptions that do not apply to this case, to preserve error, a party must continue to object each time the objectionable evidence is offered or obtain a running objection to the evidence. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)). Thus, a trial court's

7

erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). This rule applies whether the other evidence was introduced by the defendant or the State. *Id.*

Although appellant objected to the first portion of the community supervision officer's testimony that mentioned the results of appellant's polygraph tests and objected to a question in the middle of his own testimony, he did not object to every question or answer that disclosed the results, and he did not obtain a running objection to the polygraph evidence. His trial counsel also elicited some of the evidence. Nonetheless, appellant argues that his first objection preserved error relating to all of the polygraph testimony because "[f]urther objections were useless as counsel could assume the trial court would make the same ruling in each instance." But in *Leday*, the court of criminal appeals stated,

> In requiring an objection every time the objectionable evidence is offered, *we are in a minority of courts which do not follow the general rule that the repetition of an objection is needless when the court's ruling has indicated that an objection to such evidence will definitely be overruled. See Wigmore on Evidence* § 18 (Peter Tillers rev. 1983). Our rule which requires objection to every offer is sometimes called "the 'futility rule'; that is, despite ruling of judge that evidence is admissible, party must keep making futile objections on pain of waiver." 21 Charles Alan Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5039 n. 11.1 (Supp. 1998) (citing Texas cases). We have found that the general application of this rule has not proven to be burdensome for defense counsel in many cases.

8

*Id.* at 717–18 (emphasis added and footnote omitted); *see Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (relying on *Leday* to overrule an evidentiary issue); *see also Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd) (explaining that the requirement of objecting each time inadmissible evidence is offered "remains true with regard to testimony regarding polygraph examination results").

Appellant relies on a 1992 opinion from the Dallas Court of Appeals to support his argument that repeated objections to evidence are not necessary to preserve error when they would be useless or futile. *See Davis v. State*, 831 S.W.2d 839, 845 n.2 (Tex. App.—Dallas 1992, pet. ref'd); *see also Graham v. State*, 710 S.W.2d 588, 591–92 (Tex. Crim. App. 1986) (holding that error was preserved because a repeated objection would have been futile); *Cardenas v. State*, 787 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (relying on *Graham* to hold that error was preserved).[6] But we have not found an opinion from the court of criminal appeals after *Leday* in which our highest court retreated from its adoption of the statement that the parties must "keep making

---

[6]Relying on *Graham*, other courts of appeals have reached similar conclusions.

futile objections on pain of waiver."[7]  *Leday*, 983 S.W.2d at 718 & n.5; *see Lane*, 151 S.W.3d at 193.

Based on *Leday* and the other cases cited above, we hold that appellant forfeited his right to complain on appeal about the admission of evidence of his polygraph results because he did not object each time the results were asked about or obtain a running objection to evidence of the results.  *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a), *Leday*, 983 S.W.2d at 718–19.  We overrule his only point.

## Conclusion

Having overruled appellant's sole point, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 4, 2010

---

[7]We have also not found any opinion that discusses the apparent conflict between *Graham* and *Leday* (which was more recently decided).