

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00015-CR

RUDOLPH CHAVEZ,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2012-931-C1**

## MEMORANDUM  OPINION

In this appeal, appellant, Rudolph Chavez, challenges his conviction for unlawful possession of a controlled substance, methamphetamine, in an amount less than 200 grams but more than four grams and with intent to deliver, a first-degree felony.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010).  In three issues, appellant argues that:  (1) the jury charge erroneously included a non-statutory definition of "possession" and a faulty definition of "constructive transfer"; and (2) the trial court abused its discretion by excluding evidence of appellant's mental and

emotional condition because the evidence was relevant to mitigate punishment. We affirm.

## I. BACKGROUND

At trial, Darryl Moore, an officer with the Waco Police Department working in the Drug Enforcement Unit ("DEU"), testified that the DEU began investigating appellant in July 2011 for distributing methamphetamine. According to Officer Moore, the investigation lasted until September 2011 and involved more than five controlled buys and surveillance of two houses in Waco, Texas, and appellant's pickup truck.[1] As a result of their investigation, the DEU determined that appellant was indeed distributing methamphetamine.

Subsequently, officers obtained a warrant to search appellant's pickup truck and his residence at 2603 Summer Avenue. Officers intended to execute the warrant the following day; however, they later learned that appellant was not at the house. As such, officers split into groups and began searching for appellant. Officer Moore spotted appellant driving his pickup truck in the area of 18th or 19th Street and I-35. Appellant was eventually stopped at 20th Street and Dutton in Waco. The stop was later moved to a secure location several blocks away because officers wanted to apprehend appellant with the least amount of fanfare. Officer Moore recounted that DEU officers wanted to work with appellant to discover the identity of appellant's methamphetamine suppliers.

---

[1] Officer Moore explained that a "controlled buy" occurs when: "The individual relating information to you about whoever it was that was selling drugs, whatever type of drug that might be at a house, we would provide them with funds to purchase whatever type of drug they were supposed to be selling."

Upon arriving at the secure location, Officer Moore read appellant his *Miranda* rights and explained the plan to appellant. Officer Moore recalled that appellant agreed to help officers discover the identity of his methamphetamine suppliers after officers informed appellant that they had a search warrant. Thereafter, Officer Moore asked appellant if there were any drugs inside the pickup truck. At first, appellant denied having any drugs inside the pickup truck; however, he later changed his story and informed officers that he had dropped some methamphetamine in a Bush's Chicken tea glass located inside the pickup truck. Other officers searched the pickup truck and found baggies of methamphetamine inside the tea glass, a digital scale, and a small bag of marihuana in the front seat. Faced with this evidence, appellant informed officers: (1) that he had additional methamphetamine at his house; (2) about his methamphetamine suppliers; (3) that he received methamphetamine weekly in an amount of a half-ounce or greater for a three-month period; and (4) that he had additional scales at his house.

After speaking at the secure location, appellant and the officers proceeded to appellant's residence. Officer Moore noted that appellant made several requests regarding how officers should search the residence. Appellant requested that the officers searching the residence pose as construction workers who were present to repair windows at the house. Appellant was afraid that his suppliers would observe the police searching the house, which could compromise his work with police. Officers thought appellant had some good ideas and agreed to pose as construction workers.

Inside the house, officers found a box under appellant's bed, which contained approximately an ounce of methamphetamine. In addition, officers found three scales that tested positive for methamphetamine residue, plastic bags with methamphetamine residue in a shirt in appellant's closet, and a small amount of marihuana in a shoe box under appellant's bed. Officers did not find any user paraphernalia, such as needles or pipes at the house. They also did not find any large amounts of cash. In any event, they did notice that appellant had security cameras on his house that allowed him "to watch whoever approached his residence."

At the conclusion of the search, officers arranged to meet appellant again. Appellant failed to show for these meetings. Officer Moore indicated that officers tried numerous times to get appellant to cooperate, but he refused to do so. Officers assumed that appellant had changed his mind regarding the plan and therefore obtained an arrest warrant for appellant.

Chad Hayes, a forensic scientist with the Texas Department of Public Safety in Waco, tested a plastic baggy and the Bush's Chicken tea glass seized from appellant. Both tested positive for methamphetamine. The plastic baggy and the tea glass contained 24.11 grams and 746.06 grams of methamphetamine, respectively.

Dennis Baier, a Sergeant with the Waco Police Department, testified that the amount of methamphetamine in appellant's possession was a "dealer amount." Sergeant Baier also stated that he believed appellant placed the plastic baggies of methamphetamine in the Bush's Chicken tea glass to conceal the evidence from officers, rather than to get himself high. On cross-examination, Sergeant Baier acknowledged

that heavy drug use and paint sniffing could have devastating effects on a person and that a person's ability to communicate could be compromised by such actions.

At the conclusion of the evidence, the jury found appellant guilty of the charged offense of unlawful possession of a controlled substance, methamphetamine, in an amount less than 200 grams but more than four grams with intent to deliver. Thereafter, appellant pleaded "true" to enhancement and habitual allegations contained in the indictment, which referenced his prior drug convictions in January 2000 and October 2004. The jury subsequently sentenced appellant to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. PURPORTED JURY-CHARGE ERROR

In his first two issues, appellant complains about the jury charge. Specifically, in his first issue, appellant argues that the charge erroneously provided the jury with a non-statutory definition of "possession." In his second issue, appellant asserts that the charge erroneously defined "constructive transfer."

### A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was

not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Appellant admits that he did not object to the jury charge; thus he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.    The Charge's Definition of "Possession"**

Here, the charge at the guilt/innocence phase of trial provided the following in the definitions section:

> "Possession" means actual care, custody, control or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control; and that the Defendant knew that the object possessed was contraband.

On appeal, appellant contends that the first sentence comports with the definition provided by section 481.002(38) of the Texas Health and Safety Code but that the second sentence is problematic. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West

2010) ("'Possession' means actual care, custody, control, or management."). Specifically, appellant argues that the first clause of the second sentence comports with section 6.01(b) of the Texas Penal Code but that the second clause has no statutory basis and, thus, was erroneously included. *See* TEX. PENAL CODE ANN. § 6.01(b) (West 2011) ("Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."). We disagree.

Article 36.14 of the Texas Code of Criminal Procedure requires the trial judge to give the jury:

> a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any judgment in his charge calculated to arouse the sympathy or excite the passions of the jury.

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "Texas courts are forbidden from instructing the jury on any presumption or evidentiary sufficiency rule that does not have a statutory basis." *Brown v. State*, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003) (citations omitted). The operative section of the Texas Health and Safety Code, section 481.112(a), involved in this case provides the following: "Except as authorized by this chapter, a person commits an offense if the person *knowingly* manufacturers, delivers, or *possesses* with intent to deliver a *controlled substance listed in Penalty Group 1*."[2] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (emphasis added). Included in this language is the requirement that the State prove that appellant knowingly possessed a controlled

---

[2] Section 481.102(6) lists methamphetamine as a Penalty Group 1 controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (West 2010).

substance or, as several courts have noted, contraband. *See Bethancourt-Rosales v. State*, 50 S.W.3d 650, 653 (Tex. App.—Waco 2001, pet. ref'd) ("To establish the unlawful possession of cocaine, the State must prove that the defendant (1) exercised care, control, or management over the contraband, and (2) knew what he possessed was contraband."); *see also Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (same). Based on a plain reading of section 481.112(a), we cannot say that the second clause of the second sentence of the definition of "possession" lacks statutory support or is erroneous. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Accordingly, we overrule appellant's first issue.

## C. The Charge's Definition of "Constructive Transfer"

In his second issue, appellant contends that the definition of "constructive transfer" is erroneous because it is not statutorily defined. The definitions section of the guilt/innocence charge contained the following language:

> "Constructive transfer" is the transfer of a controlled substance either belonging to an individual or under his direct or indirect control, by some other person or manner at the instance or direction of the individual accused of such constructive transfer. It also includes an offer to sell a controlled substance. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the [offeree].

Assuming, without deciding, that the foregoing instruction was erroneous, we do not believe that appellant was egregiously harmed. In his brief, appellant admits that "this case did not involve a constructive transfer." Indeed, the evidence demonstrated that DEU officers engaged in more than five controlled buys with appellant that constituted actual transfers, not constructive transfers. Therefore, the

"constructive transfer" instruction amounts to surplusage that the jury could readily disregard because that issue was not pertinent to the trial. *See Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000) ("In *Burrell v. State*, we explained that 'allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded." (quoting *Burrell v. State*, 526 S.W.2d 799, 802 (Tex. Crim. App. 1975))); *see also Brown v. State*, No. 01-11-00462-CR, 2012 Tex. App. LEXIS 4150, at **19-20 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op., not designated for publication) (concluding that additional language contained in the jury charge "was mere surplusage that the jury could have disregarded as irrelevant"); *Blackwell v. State*, 193 S.W.3d 1, 16 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (same).

In addition, the evidence supporting appellant's conviction was overwhelming. In fact, witnesses testified that appellant was a dealer of methamphetamine who had large quantities of methamphetamine in his possession, scales, plastic baggies used for distribution, and security cameras installed on his house for surveillance purposes. Appellant did not have any paraphernalia that would suggest that he personally used the methamphetamine.

In determining the actual degree of harm, we examine the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and other relevant information revealed by the record of the trial as a whole. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. And

based on our review of the entire record, we do not believe that the purported error affected the very basis of the case, deprived appellant of a valuable right, or vitally affected his defensive theory. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. Accordingly, we cannot say that appellant was egregiously harmed by the "constructive transfer" instruction. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. We overrule appellant's second issue.

### III.  PUNISHMENT EVIDENCE

In his third issue, appellant asserts that the trial court abused its discretion by excluding evidence of appellant's mental and emotional condition as relevant mitigating punishment evidence. We disagree.

### A.    Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

> At the punishment phase of trial,
>
> evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried . . . .

TEX. CODE CRIM. PROC. ANN. art. 37.07, §3(a)(1) (West Supp. 2013).

Admissibility of evidence during the punishment phase of a non-capital trial is a function of policy rather than relevancy. *Muhammad v. State*, 46 S.W.3d 493, 498 (Tex. App.—El Paso 2001, no pet.) (citing *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990); *Schielack v. State*, 992 S.W.2d 639, 641 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). "Evidence admitted to inform the jury's punishment decision is not a question of logical relevance, as there are no distinct facts to be proven." *Id.* (citing *Schielack*, 992 S.W.2d at 641). "Mitigating circumstances relevant to punishment are circumstances which will support a belief that defendants who commit criminal acts that are attributable to such circumstances are less culpable than others who have no such excuse." *Id.* (citing *Robison v. State*, 888 S.W.2d 473, 487 (Tex. Crim. App. 1994)).

As noted above, article 37.07, section 3(a) of the Texas Code of Criminal Procedure authorizes the trial court to admit punishment evidence "as to any matter the court deems relevant to sentencing . . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a). As such, the trial court "enjoys wide latitude in admitting relevant evidence so long as its admission is otherwise permitted by the rules of evidence." *Muhammad*, 46 S.W.3d at 498-99 (citing *Mock v. State*, 848 S.W.2d 215, 225 (Tex. App.—El Paso 1992, pet. ref'd)).

**B.     Discussion**

During the punishment phase of trial, appellant called his sister, Marisela Mendez, to testify about his mental and emotional condition. Appellant's counsel asked Mendez about appellant's habit of sniffing paint, to which she responded that she had heard of it. The State objected to this testimony as hearsay, and the trial court sustained the State's objection. The State also objected to appellant's counsel's

questions about appellant's reports that Mendez's life was in danger on hearsay grounds. Once again, the trial court sustained the objection. However, Mendez did testify, without objection, that she had observed appellant "talking to himself, seeing things, rocking back and forth," hallucinating, staying awake for long periods of time, cleaning outside in the middle of the night, and abusing methamphetamine in high doses. In addition, the record contains testimony from psychiatrist Stephen Mark, M.D., who noted that appellant had reported hearing voices.[3]

Shortly thereafter, appellant supplied the trial court with an offer of proof by way of a bill of exception. In appellant's bill of exception, Mendez testified that appellant has made numerous statements to her that are not true. Mendez also stated that appellant has told her things that have happened to her that have not really happened. Appellant also elicited testimony from Mendez regarding the following: (1) appellant told her that he had a video recording of her being captured—an event that is not true; (2) appellant told Mendez that she was going to be killed—another event that is not true; and (3) appellant has repeatedly made statements to Mendez that were not true for "the past maybe six, seven, eight months . . . ." Mendez also noted that appellant has called her thirty to forty times a day and that appellant hears or sees things that do not exist or have not occurred.

---

[3] It is noteworthy that Dr. Mark evaluated appellant twice and determined both times that appellant was competent to stand trial. In addition, the record demonstrates that appellant made numerous outbursts during trial despite several warnings from the trial court. Eventually, appellant was removed from the courtroom because of his failure to control his outbursts. Nevertheless, Dr. Mark conducted another evaluation of appellant and determined that appellant was "trying to add to or augment any findings. It looked like he was putting on." Upon further questioning, Dr. Mark acknowledged that he believed appellant to be faking and malingering.

Based on our review of the record, we cannot say that the trial court abused its discretion in excluding portions of Mendez's testimony. First, much of the content of the excluded testimony was admitted elsewhere. In particular, Mendez testified that she observed appellant "talking to himself, seeing things, rocking back and forth," hallucinating, staying awake for long periods of time, cleaning outside in the middle of the night, and abusing methamphetamine in high doses. Furthermore, Dr. Mark testified about his evaluation of appellant, which included appellant's self-report that he hears voices. Arguably, the excluded evidence was merely cumulative of the evidence about appellant's mental and emotional condition that was admitted. *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, or needless presentation of cumulative evidence."). And as such, we do not believe that the trial court's decision to exclude portions of Mendez's testimony was outside the zone of reasonable disagreement as to constitute an abuse of discretion. *See Bigon*, 252 S.W.3d at 367; *see also McDonald*, 179 S.W.3d at 576.

Nevertheless, even if it was error to exclude the testimony elicited during appellant's bill of exception, we fail to see how such an exclusion of this evidence is harmful error. In *Muhammad*, the El Paso Court of Appeals noted the harm analysis involved with the admission or exclusion of evidence. *See* 46 S.W.3d at 509. In particular, Texas Rule of Appellate Procedure 44.2 governs harm analysis in criminal cases. *See id.* (citing TEX. R. APP. P. 44.2). Texas courts have held that generally error in the admission or exclusion of evidence does not rise to the constitutional level.

*Muhammad*, 46 S.W.3d at 509 (citing *Fowler v. State*, 958 S.W.2d 853, 865 (Tex. App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999)). Accordingly, we assay harm in this issue under rule 44.2(b), which provides that "any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Id.* (citing TEX. R. APP. P. 44.2(b)). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *Peters v. State*, 31 S.W.3d 704, 722 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). Moreover, a reviewing court will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Id.* (citing *Peters*, 31 S.W.3d at 722).

Here, the trial court admitted ample evidence of appellant's mental condition, including Mendez's testimony that appellant was "talking to himself, seeing things, rocking back and forth," hallucinating, staying awake for long periods of time, cleaning outside in the middle of the night, and abusing methamphetamine in high doses. Furthermore, according to Dr. Mark, appellant self-reported that he hears voices. In addition, as noted earlier, appellant engaged in numerous outbursts during trial—most of which were observed by the jury. Given the ample evidence of appellant's mental condition that was admitted, and after examining the record as a whole, we have fair assurance that the purported error in excluding portions of Mendez's testimony would not have influenced the jury, or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Muhammad*, 46 S.W.3d at 509; *Peters*, 31 S.W.3d at 722.

We overrule appellant's third issue.

## IV.    CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed December 5, 2013
Do not publish
[CRPM]