Opinion issued April 9, 2024



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00939-CR

————————————

**CEDRIC LEE POWELL JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1659234**

---

## MEMORANDUM OPINION

Cedric Lee Powell pleaded guilty to assault continuous family violence. The trial court initially withheld a finding of guilt and placed Powell on three years' deferred adjudication community supervision. Later, on the State's motion, the trial court revoked Powell's community supervision, adjudged him guilty, and sentenced

him to ten years' confinement. In a single issue on appeal, Powell contends the trial court abused its discretion by admitting opinion evidence at the adjudication hearing. Because we conclude any evidentiary error was harmless, we affirm.

## Background

Complainant V. Bradshaw and Powell have known each other for more than a decade and have children together. In December 2019, Bradshaw notified law enforcement that Powell showed up at her residence upset that she was involved with another man. Powell had locked her in the bathroom as she was getting out of the shower and physically assaulted her. Powell pleaded guilty to assault continuous family violence in June 2022, and the trial court placed him on three years' deferred adjudication community supervision.

Eighteen days later, Bradshaw and her boyfriend arrived at her residence and were exiting their vehicle when Powell approached them. To avoid a conflict, Bradshaw told her boyfriend to leave. Powell then pulled Bradshaw out of the car, dragged her by her hair into a bedroom, locked the door, and placed a firearm he was carrying onto the bed. Shortly after, Powell left the bedroom, walked to the garage with his firearm, and saw that his truck window was broken. He forced Bradshaw into his truck and demanded that she take him to her boyfriend's house. Bradshaw refused but offered to pay for the damage to Powell's truck. Powell pulled the truck

2

into Bradshaw's driveway and told her to call law enforcement to report the broken window, which she did.

Law enforcement recovered the firearm, which was loaded, from a shelf in Bradshaw's garage. They also found a magazine and ammunition matching the firearm in Powell's vehicle.

The State moved to adjudicate guilt based on multiple violations, including aggravated sexual assault; unlawfully carrying a weapon; possessing a firearm, ammunition, or both; and failing to pay court fines and costs.

The trial court heard evidence about Powell unlawfully carrying a firearm at the adjudication hearing, including testimony from Bradshaw, another person who was at Bradshaw's home when Powell brandished the firearm, a law enforcement officer, and a community supervision officer. The State asked Bradshaw how she felt about Powell being on probation. Over Powell's relevance objection, she answered:

> [Bradshaw]: I feel like it's unfair because he keeps getting away with it. So, he keeps doing it. It gets worse and worse every time.
>
> [State]: Were you afraid for your life when he had the gun?
>
> [Bradshaw]: Yes. When I got the phone call that he got out, I didn't sleep. I was up all night checking my doors and windows.
>
> [State]: Were you afraid for the lives of your children?
>
> [Bradshaw]: Yes. That's why I kept talking to him, telling him to stop for the sake of my kids. It was nine kids in my house.

[State]: And what was his response?

[Bradshaw]: F the kids. He was only worried about the window on the truck.

The trial court ultimately found Powell violated his deferred adjudication, revoked his community supervision, and sentenced him to ten years' confinement.

## Standard of Review

An order revoking community supervision is reviewed under an abuse of discretion standard. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Akbar v. State*, 190 S.W.3d 119, 122 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The trial court's ruling on the admissibility of evidence is also reviewed for an abuse of discretion. *Campos v. State*, 317 S.W.3d 768, 777 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). An abuse of discretion occurs if the trial court's ruling was "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).

## Admission of Complainant's Testimony

Powell argues that the trial court abused its discretion by admitting Bradshaw's testimony at the adjudication hearing because a complainant's opinion on whether a defendant should remain on probation is inadmissible. Powell also suggests that Bradshaw's testimony was an improper punishment recommendation.

During punishment, evidence may be offered on matters the trial court finds relevant to sentencing. *See* TEX. CODE CRIME. PROC. art. 37.07, § 3(a)(1). Relevant evidence—evidence that has any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence—is generally admissible. TEX. R. EVID. 401, 402. Relevance is determined by evaluating the purpose for which evidence is introduced. *Boudreaux v. State*, 631 S.W.3d 319, 332 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). "Questions of relevance should be left largely to a trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion." *Moreno v.* State, 858 S.W.3d 453, 463 (Tex. Crim. App. 1993).

When the defendant pleads guilty to the charged offense, the trial becomes a unitary proceeding during which the factfinder considers both the issues of guilt and punishment. *See Barfield v. State*, 63 S.W.3d 446, 449 (Tex. Crim. App. 2001) (guilt-innocence and punishment are bifurcated only in trials before jury on not-guilty pleas); *Houston v. State*, 201 S.W.3d 212, 221 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("After a guilty plea, the trial is 'unitary' and merges into the punishment phase.") (citing *Carroll v. State*, 975 S.W.2d 630, 632 (Tex. Crim. App. 1998)). In a unitary trial, the State introduces testimony "to enable the jury or judge intelligently to exercise discretion in the assessment of punishment." *Carroll*, 975 S.W.2d 630 at 632.

5

Relevant evidence during the punishment phase is evidence helpful to the factfinder in determining the appropriate sentence for the defendant. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009). Like a punishment hearing, the parties may offer any evidence the trial court finds relevant to sentencing. *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1); *see also Williams v. State*, No. 14-08-00317-CR, 2009 WL 1057518, at *1 (Tex. App.—Houston [14th Dist.] Apr. 21, 2009, no pet.) (mem. op., not designated for publication) (in unitary trial, as in punishment hearing, parties may offer any evidence trial court finds relevant to sentencing).

Witnesses have traditionally been prohibited from recommending a particular punishment because it is not relevant to the factfinder's assessment of punishment. *See Sattiewhite v. State*, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989) (prohibiting expert witnesses from recommending specific punishment because such testimony tends to confuse jury); *but see Rodriguez v. State*, No. 13-02-625-CR, 2004 WL 756355, at *1–2 (Tex. App.—Corpus Christi-Edinburg Apr. 8, 2004, no pet.) (mem. op., not designated for publication) (trial court did not abuse its discretion by allowing witness to testify that defendant was not suitable for probation at punishment phase before trial court when there was no risk of jury confusion). A punishment recommendation from someone other than the complainant, such as an expert or a complainant's family members, generally is inadmissible. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (wishes of complainant's

6

family members as to a defendant's punishment are inadmissible); *Taylor v. State*, 109 S.W.3d 443, 454 (Tex. Crim. App. 2003) (suggesting there may be difference between admissibility of complainant's and non-complainant's punishment recommendations). But courts have recognized that evidence of a defendant's suitability for probation may be admitted under article 37.07, section 3(a) of the Code of Criminal Procedure." *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) (allowing evidence during punishment phase "as to any matter the court deems relevant to sentencing"); *see also Ellison v. State*, 201 S.W.3d 714, 721–22 (Tex. Crim. App. 2006) (probation officer's opinion on defendant's suitability for community supervision was relevant to enable factfinder to "tailor the sentence to the particular defendant"); *Peters v. State*, 31 S.W.3d 704, 718–19 (Tex. App.— Houston [1st Dist.] 2000, pet. ref'd) (expert testimony about defendant's suitability for probation can be relevant if it helps factfinder determine appropriate sentence).

Here, Bradshaw did not make a specific punishment recommendation. She testified that, based on her experiences with Powell, probation was "unfair." Without deciding whether the trial court abused its discretion by admitting Bradshaw's testimony, we conclude any error was harmless.

Improperly admitted evidence is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Petriciolet*

7

*v. State*, 442 S.W.3d 643, 653–55 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). In determining harm, we review the record to assess whether a defendant's substantial rights were violated and if their punishment was affected. *See* TEX. R. APP. P. 44.2(b); *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (applying harm analysis to admission of improper evidence at punishment).

A substantial right is affected when the error had a substantial and injurious effect on a factfinder's verdict or punishment decision. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We review the entire record to determine the wrongfully admitted evidence's effect. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). Among other things, we may consider: (1) the nature of the evidence supporting the verdict; (2) the character of the alleged error and how it might be considered in connection with other evidence in the case; (3) whether the State emphasized the error; and (4) whether overwhelming evidence of guilt was present. *See Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). We may not reverse if, after examining the record, we are fairly assured that the error did not influence the decision or had but a slight effect on it. *See* TEX. R. APP. P. 44.2.(b); *Reese*, 33 S.W.3d at 243.

At the end of the adjudication hearing, the trial court determined that Powell's possession of a firearm and ammunition alone was enough to revoke his community supervision. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.]

1980); *see also Akbar*, 190 S.W.3d at 123 ("Proof of a single violation is sufficient to support revocation of community supervision."). Bradshaw's testimony was immaterial to the State's case against Powell because the evidence showed that Powell possessed a firearm and ammunition in violation of his community supervision. Bradshaw and another witness testified that Powell brandished a loaded firearm while at Bradshaw's residence. Law enforcement retrieved a loaded firearm, which both witnesses identified as belonging to Powell, from Bradshaw's garage. The State also had photographs of the loaded firearm. And the record reflected that Powell had a prior felony conviction for aggravated robbery with a deadly weapon.

Likewise, Bradshaw's testimony did not substantially influence the trial court's assessment of punishment because other evidence showed that Powell was not a suitable candidate to remain on community supervision. After receiving deferred adjudication for the felony offense of continuous family violence against Bradshaw, Powell soon after violated his conditions by brandishing a firearm at Bradshaw's home. Bradshaw testified that she feared for her life and the lives of her children when Powell was at her home with the loaded firearm. She also testified, "When I got the phone call that [Powell] got out, I didn't sleep. I was up all night checking my doors and windows." Thus, regardless of Bradshaw's testimony that Powell's original sentence was "unfair," the trial court could infer that she did not want Powell to remain on community supervision. *Saenz v. State*, No.

14-12-00350-CR, 2013 WL 1789442, at *3 (Tex. App.—Houston [14th Dist.] Apr. 25, 2013, no pet.) (mem. op., not designated for publication) (complainant's punishment recommendation was harmless because factfinder could have assumed complainant would want a long sentence).

The State made no reference to the challenged testimony during closing arguments. Instead, the State emphasized that Powell waited only 18 days after receiving deferred adjudication to violate his conditions by bringing a firearm to Bradshaw's home. Any error in admitting Bradshaw's challenged testimony had, at most, only a slight effect on the trial court's assessment of punishment. *See Hines v. State*, 396 S.W.3d 706, 711 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (any error in trial court's admission of complainant's testimony that she wanted defendant to receive maximum sentence was harmless when State did not reference it in closing argument and factfinder would not have been surprised victim wanted long punishment).

We overrule Powell's sole issue.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).